Antonio VEGA, Individually and as next friend of Javier Antonio Vega, a minor, Appellant,

v.

ROYAL CROWN BOTTLING COMPANY et al., Appellees.

No. 915.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Jack K. Dahlberg, Jr., Bonilla, Read, Rodriguez, Beckman & Bonilla, Corpus Christi, for appellant.

Harry F. Maddin, Allison, Maddin, White & Brin, J. R. Sorrell, Ronald L. Chachere, Sorrell, Anderson & Sorrell, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

In this products liability case, Antonio Vega sued H. E. B. Food Stores and Royal Crown Bottling Company on behalf of his twenty-three month old son, Javier. While in the care of his grandparents, Mr. and Mrs. Mariano Cruz, and while handling by himself a sixteen ounce bottle of Royal Crown Cola, the child suffered injuries when the bottle allegedly exploded. The bottle of cola had been delivered by Royal Crown to H. E. B. and had been bought, together with others in a six-pack, from H. E. B. by Mr. Cruz. The case was submitted on special issues to a jury who found against the plaintiff. Based on that finding the trial court entered a take-nothing judgment. The plaintiff appeals.

H. E. B. and Royal Crown had impleaded Owens-Illinois Glass Company as a third party defendant. Before the close of all testimony, each of the original defendants took a non-suit regarding Owens-Illinois; Owens-Illinois, therefore, is not a party to this appeal.

Appellant's first six points of error are addressed to the trial court's refusal to admit into evidence the testimony of appellant's expert witness, George Greene, Jr., about his examination of the bottle fragments which injured the child.

The events determinative of our decision on this matter are as follows: Owens-Illinois, the third party defendant at the trial level, filed a motion under Rule 167, T.R. C.P., to require appellant to produce the fragments of the bottle in question. This motion was filed in 1972 before the trial of this case. On September 18, 1972, the district judge considering the motion wrote a letter to the attorneys who represented the parties to this action. There the judge expressed his intent that "the Third Party Defendant's Rule 167 Discovery Motion should be granted . . ."; stated the conditions upon which the motion was to be granted; and requested the attorney for Owens-Illinois to consult with opposing

counsel and then to prepare an order in accordance with the conditions set out in the letter. The order referred to in the letter was never prepared. The bottle fragments were lost in the mail even though Greene had properly deposited them in the mail addressed to the representative designated by Owens-Illinois.

On March 11, 1974, trial of the action was begun. On that day, before any evidence was presented, Royal Crown and H. E. B. presented their "Motion in Limine" seeking to preclude any testimony by any expert witness of plaintiff about any physical examination of the bottle in question unless they, the defendants, were allowed to examine the bottle fragments. The trial court granted the motion.

Appellant contends that the exclusion of the proffered expert testimony was error because he was never ordered to produce the glass fragments under Rule 167. Absent a Rule 167 order of discovery, appellant contends that sanctions under Rule 170, T.R.C.P., were not available to appellees for the exclusion of the expert's testimony.

■ Appellees contend that the September letter written by the district judge was an order for discovery. We disagree. The letter was merely an expression of the opinion of the court at the time the letter was written and should be considered only as a direction to counsel in the preparation of a final order. Until a final order was entered, the trial court could change its mind. We would point out that the letter states that the discovery motion "should be granted. . . ." The letter does not contain a recitation which states that the motion was granted as of the date of the letter. Further, the letter directs that an order be prepared after consultation with opposing counsel. It is clear that the letter, at best, is an order to prepare an order and has no other effect. See *Chandler v. Doran Co.*, 44 Wash.2d 396, 267 P.2d 907 (1954).

■ We also hold that the oral motions for discovery, as a basis for sanction, made by H. E. B. and Royal Crown during trial were not timely. Such motions, during trial, could not be the basis for the trial court's exercise of its coercive powers under Rule 170. Rule 170, as it applies to Rule 167, is applicable to pre-trial proceedings. *American Central Insurance Co. v. Texhoma Stores, Inc.*, 401 S.W.2d 593 (Tex.Sup. 1966); *Employers Mutual Liability Insurance Company of Wisconsin v. Butler*, 511 S.W.2d 323 (Tex.Civ.App., Texarkana 1974, writ ref'd n. r. e.).

■ We now direct our attention to the exclusion of appellant's expert testimony on the basis of the court's previous order sustaining the appellees' motions in limine. The purpose of a motion in limine is to avoid the injection into the trial of matters which are irrelevant, inadmissible and prejudicial, and granting of the motion is not a ruling on evidence. *Redding v. Ferguson*, 501 S.W.2d 717 (Tex.Civ.App., Fort Worth 1973, writ ref'd n. r. e.). Therefore, any error in the trial court's refusal to admit the testimony of appellant's expert witness must be shown to have been such a denial of appellant's right as was reasonably calculated to cause and probably did cause rendition of an improper judgment. The burden of showing such harm is upon appellant. *Clark v. Turner*, 505 S.W.2d 941 (Tex.Civ. App., Amarillo 1974, no writ); Rule 434, T.R.C.P.

■ The jury, in answer to Special Issue number 1, found that the Royal Crown bottle and its contents were reasonably fit for the purposes for which it was intended to be used at the time the bottle left the care, custody and control of appellee H. E. Butt Grocery Company. Even if we accept all of appellant's expert testimony (on bill of exception) as true, we believe appellant has failed to show that the exclusion of the proffered testimony probably caused the rendition of an improper judgment. That testimony reveals that the bottle was "defective". The defect was described as a "chip or scratch on the outside surface of

the bottle". There is no expert testimony about the time when the defect came into existence. That time is crucial. *Pittsburg Coca-Cola Bottling Works v. Ponder,* 443 S.W.2d 546 (Tex.Sup.1969). See Hill, *How Strict is Strict ?*, 32 Tex.B.J. 759, 768 (1969). Other evidence presented at the trial reveals that the bottles of Royal Crown Cola were left in an ice chest in the backyard of the child's grandparents from a Wednesday evening until about 6:30 p. m. the next day. The ice chest was apparently unattended for a large portion of the time before the accident. At least four persons were known to have access to the ice chest. From this evidence, along with that of the expert had it been presented to them, the jury could have reasonably inferred that the defect occurred *after* the bottle in question left the care, custody and control of appellee H. E. Butt Grocery Company. The appellant's first six points of error are overruled.

Appellant's seventh point of error complains of the trial court's sustaining objections to the following questions propounded to Mariano Cruz by counsel for appellant:

"Q Did you at any time while you were in the store bang those bottles against anything?"

\* \* \* \* \* \*

"Q Did you ever drop these bottles at any time from the time you bought them?

A No sir."

■ Counsel for appellees objected to these questions as leading. The objection to the first question was sustained. The statement of facts does not show what the answer to the question would have been. Appellant has not brought forth the answer by bill of exception. Under such circumstances, it is not possible for us to determine whether the error, if any, was reasonably calculated to cause and probably did cause the rendition of an improper judgment. See *Texas State Board of Registration for Professional Engineers v. Dalton,*

*Hinds & O'Brien Engineering Co.,* 382 S.W.2d 130 (Tex.Civ.App., Corpus Christi 1964, no writ); *Garcia v. Lacey,* 316 S.W.2d 183 (Tex.Civ.App., San Antonio 1958, no writ).

■ About the second question, we would point out that the witness answered the question even though the objection was sustained. But the answer was not ordered stricken, nor was the jury instructed to disregard it. Further, in light of other testimony given by Mr. Cruz in regard to his handling of the bottle, we feel that appellant has failed to show that the trial court committed any error which probably caused rendition of an improper judgment. Rule 434, supra. Appellant's seventh point of error is overruled.

■ In appellant's eighth point of error he complains that the trial court erred in excluding a letter by Dr. Lankford to counsel for appellee H. E. B. regarding the extent of the child's disability. This point of error is without merit. The letter in question was identified as plaintiff's exhibit number 1, but it was not made a part of the record before us. We have no way of determining its contents. Appellant's complaint of its exclusion presents no error.

■ Further, the argument of appellant's counsel at trial and in his brief reveals that the letter would be material to the issue of damages to Javier Vega. Because the jury found that the bottle in question was reasonably fit for the purpose for which it was intended to be used, the damage issue became immaterial. *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334 (Tex.Com.App.1939, opinion adopted); *O'Day v. Sakowitz Brothers,* 462 S.W.2d 119 (Tex.Civ.App., Houston [1st Dist.] 1970, writ ref'd n. r. e.). Appellant's eighth point is overruled.

Appellant's ninth point of error asserts that the trial court erred in allowing the physician who attended Javier Vega to relate certain medical history given by the child's grandmother. Appellant contends

that such testimony was hearsay and should have been excluded by the trial court.

■ Appellees point out that the testimony was not admitted for purposes of proving any fact in issue; that it was admitted solely for purposes of impeachment. The essence of the complained of testimony was that Javier Vega had fallen upon the bottle and thereby cut his wrist. Any error in permitting the testimony was harmless because appellant has failed to show that admission of this testimony for the limited purpose of impeachment probably caused the rendition of an improper judgment. Rule 434, supra. Appellant's ninth point is overruled.

Appellant's tenth and eleventh points of error complain of the trial court's failure to submit appellant's requested definition of "not reasonably fit for the purpose for which it was intended to be used". Appellant argues that this was clearly error in light of the fact that the jury, during its deliberations, asked for a definition of the term "unreasonably dangerous".

Rule 279, T.R.C.P., states:

". . . Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment."

The definition which appellant sought to have incorporated into the court's charge is found in "Plaintiffs' Objections To The Court's Charge". Rule 273, T.R.C.P. provides:

". . . A request by either party for any . . . definitions or explanatory instructions shall be made separate and apart from such party's objections to the court's charge."

■ Appellant has, therefore, failed to comply with Rule 273. Also see *T J Service Company v. United States Fidelity & Guaranty Company,* 472 S.W.2d 168 (Tex.Civ. App., Corpus Christi 1971, writ ref'd n. r.

e.). Appellant's tenth and eleventh points are overruled.

■ In his twelfth and thirteenth points of error, appellant argues that there is no evidence to support the jury's answer to Special Issue number 1 and that such finding is contrary to the greater weight and preponderance of the evidence. As previously noted, the jury found in Special Issue number 1 that the bottle and its contents were reasonably fit for the purposes for which it was intended to be used at the time the bottle left the care, custody and control of H. E. Butt Grocery Company.

The twelfth point, the "no evidence" point, is technically incorrect as presented to us. Appellant had the burden of proving that the bottle was not reasonably fit for its intended use. Appellant properly should have asserted in this point that the evidence established conclusively, or as a matter of law, that the bottle was not reasonably fit. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

Nevertheless, we will consider appellant's "no evidence" point. All evidence in this case regarding the existence of a defect in the bottle and the time the defect came into existence is circumstantial. That circumstantial evidence which favors appellees' contentions and supports the jury's finding in answer to Special Issue number 1 is summarized as follows: According to Royal Crown's plant manager, all new bottles are received from the manufacturer in pasteboard boxes with corrugated paper between the bottles. On the average, these new bottles are stored thirty days or less prior to being used. Used bottles come in wooden crates. Loose bottles, however, are not accepted. The wooden crates are not used if they are not in good condition, and each case is inspected every time it goes through the production line. The empty bottles are removed from the truck either by hand or by forklift. After being removed from the truck, the cases of bottles are parked on a dock which is sheltered by a roof. The area

is protected from theft and vandalism by a high barbed wire fence. The bottles remain on the dock only one day. Then the bottles are moved to the production line.

During the production process, each bottle is subjected to three visual inspections. Also there is a machine which, through the use of a narrow light beam, inspects the bottom and the neck of each bottle for foreign matter and chips in the bottom. While on the line the bottles are subjected to 65 pounds of counter pressure. Any bottle that has a defect in it would explode under this pressure. At this point many bottle failures do occur. Thereafter when the liquid is put into the bottles, the bottle temperature is about 85 degrees; the liquid temperature is about 40 degrees. This is sufficient as a thermal shock test. The filled bottles are stored in a warehouse to await delivery; they are never stored outside. The sixteen ounce bottles of Royal Crown Cola are packaged in high cushion cartons with partitions that run the full depth of each carton. The cartons have been designed to prevent bottles from rubbing or bumping against each other.

While on display in the supermarket, some bottles are dropped, according to the H. E. B. store manager. Those bottles, however, which do not break are checked by store employees. Also, the display areas are checked twice each day.

From Mr. Cruz we learn that he bought the six pack of R. C. Cola on a Monday or Tuesday. The bottles sat on the porch of his home one or two days. On Wednesday, they were placed in the ice cooler in his backyard. Mr. Cruz stated that he placed the bottles in the ice chest one at a time and that he did not notice anything wrong with any of the bottles. The ice chest was unattended in the backyard of the Cruz home. At least four persons had access to the ice chest prior to the date of the accident.

The foregoing evidence is some proof, above a mere scintilla, that the suspected bottle was reasonably fit for its intended use when it left the care, custody and control of the appellee H. E. B.

Nor are we able to find, as we necessarily consider all the evidence, that the evidence to the contrary so greatly outweighs that which supports the jury's finding as to make such finding clearly wrong and manifestly unjust.

Most of the evidence which is contrary to the jury's finding is found in the testimony of appellant's expert witness, Mr. Greene. He testified that carbonated beverage bottles do explode without being struck by any superficial blow. Some reasons given for such explosions are over pressure carbonization, thermal shock, a defect such as a scratch inside a bottle, and a defect such as a chip or scratch on the outside of a bottle. Mr. Greene stated that the 65 pounds per square inch test used in Royal Crown's production process is not an adequate test of what the bottle will do at a later time. It is his opinion that a temperature change of 75 degrees within a short period of time is necessary to check for thermal shock. We note that appellee Royal Crown employed a gradual temperature change in its production process. Mr. Greene further stated that the only other method of testing a bottle's strength, other than pressure test and thermal shock test, is a visual inspection. In Mr. Greene's opinion, a proper visual inspection would take from ten to twenty seconds per bottle, rather than the three bottle per second method used by Royal Crown.

The testimony of Mr. and Mrs. Cruz and their daughter does not reveal any mishandling by them. Also, Mr. Rossey, the manager of the H. E. B. Store which sold the bottle in question stated that some bottles of Royal Crown Cola have come in chipped. He further stated that it is possible for a customer to buy a chipped bottle.

 In reviewing an "insufficient evidence" point of error, such as appellant's thirteenth point, we must examine all of the evidence presented to the jury. In doing so, we find that the evidence supports

conflicting inferences. It is important to note that the testimony of appellant's expert witness does not establish any material fact as a matter of law. *Elrod v. Elrod,* 517 S.W.2d 669 (Tex.Civ.App., Corpus Christi 1974, no writ); *Hodges v. State,* 403 S.W.2d 207 (Tex.Civ.App., Texarkana 1966, writ ref'd n. r. e.). Indeed, the jury may accept lay testimony over that of experts. *Blackmon v. Piggly Wiggly Corporation,* 485 S.W.2d 381 (Tex.Civ.App., Waco 1972, writ ref'd n. r. e.); *Muro v. Houston Fire & Casualty Insurance Company,* 329 S.W.2d 326 (Tex.Civ.App., San Antonio 1959, writ ref'd n. r. e.). Although this Court has the power to reverse where the finding of the jury is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, we are not authorized to substitute our judgment for that of the jury simply because we might have reached a different conclusion on the facts. Having examined the entire record, we find that the jury's answer to Special Issue number 1 is not so contrary to the weight and preponderance of the evidence as to be manifestly wrong and unjust. See *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Appellant's twelfth and thirteenth points of error are overruled.

The judgment of the trial court is affirmed.