**INDUST–RI–CHEM LABORATORY, INC., Appellant,**

v.

**PAR–PAK COMPANY, INC., and South-line Metal Products Co., Appellees.**

No. 20073.

Court of Civil Appeals of Texas, Dallas.

April 23, 1980.

Rehearings Denied June 1, 1980.

Alan Wilson, Law, Snakard, Brown & Gambill, Fort Worth, for appellant.

J. Carlisle DeHay, Jr., Hance W. Burrow, Larry L. Gollaher, Dallas, for appellees.

Before AKIN, STOREY and HUM-PHREYS, JJ.

AKIN, Justice.

This is an appeal from a joint and several judgment rendered against Par-Pak and Southline and in favor of Indust-Ri-Chem. The suit was based on an alleged breach of express warranty by sample in a sale from Par-Pak to Indust-Ri-Chem of lined 55-gallon drums manufactured by Southline. The

appellant, Indust-Ri-Chem, obtained a jury finding of breach of an express warranty by Par-Pak, but the jury also found Indust-Ri-Chem negligent in failing to test the drums and that such negligence proximately caused 25% of Indust-Ri-Chem's damages. Accordingly, the trial court reduced Indust-Ri-Chem's damage award by 25%; refused to award treble damages and attorney's fees even though Indust-Ri-Chem pleaded a cause of action under the Deceptive Trade Practices Act; denied prejudgment interest; and refused to submit four deceptive trade practice issues. Indust-Ri-Chem appeals from these rulings.

Southline, the manufacturer, also appeals from both Indust-Ri-Chem's judgment against it and a judgment in favor of Par-Pak for indemnity, complaining of a lack of jury findings to establish an express warranty between it and Par-Pak, and of a lack of privity with Indust-Ri-Chem. Appellee Par-Pak asserts by cross-point the absence of a jury issue on reliance by Indust-Ri-Chem on the express warranty. We reverse the judgment against Southline and remand for a new trial both Indust-Ri-Chem's suit against Southline and Par-Pak's claim against Southline for indemnity. We modify Indust-Ri-Chem's judgment against Par-Pak by eliminating the 25% reduction of damages based on the jury finding of Indust-Ri-Chem's negligent failure to test, because we hold that negligence is not a defense to an action in contract. The damages awarded Indust-Ri-Chem for breach of the express warranty are trebled, and attorney's fees are awarded to Indust-Ri-Chem pursuant to the Deceptive Trade Practices Act. As so modified, the judgment against Par-Pak is affirmed.

The record reflects that in late August of 1976, a salesman for Par-Pak, H. C. Crago, approached Walter Jeanes, Indust-Ri-Chem's plant manager, inquiring if Indust-Ri-Chem needed any of Par-Pak's products. Jeanes sought a drum lining to ship a highly corrosive chemical used in the electronics industry, known as Restrip J–100. Accordingly, Jeanes gave Crago a bung from a lined drum Indust-Ri-Chem was using to ship J–100 as an example of what was needed. Crago arranged to have Southline provide sample pans with lining which Indust-Ri-Chem could test. After testing with J–100 at temperatures up to 130° centigrade, Indust-Ri-Chem placed an order in January 1977, for a truckload of drums with lining like the sample pans. Jeanes testified that he told Crago the sample pans had "SL–254" stamped on the lining and that he specifically ordered the lining like the samples. Indust-Ri-Chem then issued a written purchase order, which Crago denied having seen, for 240 steel drums "with lining No. 254." Crago testified that he called Southline and was told that the pans tested by Indust-Ri-Chem were lined with "SL–259." Accordingly, Par-Pak issued a purchase order to Southline on January 24, 1977, for 240 steel drums lined with "SL–259 . . like samples." A copy of this purchase order was not sent to Indust-Ri-Chem.

Southline shipped 239 steel drums with the lining it designated as "SL–259" to Indust-Ri-Chem on March 2, 1977. The designation "SL–259" did not appear on the drums or on the bill of lading. Upon visual inspection, the drums received by Indust-Ri-Chem appeared to have exactly the same lining as the sample pans previously tested by Indust-Ri-Chem. Forty-five drums were filled with J–100 and placed in inventory. Forty drums were used to ship J–100 to IBM in New York. Upon delivery to IBM, it was discovered that the chemical had destroyed the drum lining, thus ruining the contents. The shipment was rejected, repackaged by IBM, and returned to Indust-Ri-Chem. Indust-Ri-Chem disposed of the contaminated J–100 and obtained substitute containers to replace the IBM shipment.

After the order for 239 drums was placed but before delivery of that order, Indust-Ri-Chem asked for four drums to ship J–100 to Delco. These four drums were received before the 239 drum shipment and were filled with J–100 and sent to Delco. These drums also failed but Indust-Ri-Chem did not discover the failure until after the IBM order was shipped.

By tests Indust-Ri-Chem determined that Southline and Par-Pak had provided a different drum lining than the sample pans which had been successfully tested. Upon their refusal to honor Indust-Ri-Chem's demand for damages, this litigation ensued. We address first Southline's cross-point with respect to lack of privity between it and Indust-Ri-Chem and the failure of the trial judge to submit issues pertaining to a breach of warranty as to Par-Pak's indemnity claim against Southline.

### Privity and Absence of Issues on Express Warranty

Southline, the manufacturer, complains by cross-point that the judgment against it was erroneous because no privity of contract existed between it and Indust-Ri-Chem. Southline also asserts that the record does not support a finding that it made an express warranty. We reject the first contention. Because we find that a fact issue exists with respect to whether the sample pans tested were a part of the basis of the bargain in the sale by Southline, we agree with the latter contention. Accordingly, we reverse Indust-Ri-Chem's judgment against Southline. Because the judgment in favor of Par-Pak for indemnity against Southline was likewise predicated upon an express warranty, that judgment is also reversed.

■ Undisputedly, Southline dealt solely with Par-Pak and Par-Pak in turn sold the lined drums to Indust-Ri-Chem. Southline contends that Indust-Ri-Chem cannot recover from Southline for breach of an express warranty because it was not in privity of contract with Indust-Ri-Chem. We cannot agree. We hold that privity of contract is not required where the manufacturer furnishes samples to a middleman with the knowledge that these samples are likely to be submitted to the ultimate buyer so as to induce a sale of the product.[1] *Clarostat Manufacturing Co. v. Alcor Aviation, Inc.*, 544 S.W.2d 788 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); *Ford Motor Co. v. Lemieux Lumber Co.*, 418 S.W.2d 909, 911

(Tex.Civ.App.—Beaumont, 1967, no writ). We see no distinction between the situation here and the situation in *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977). In that case the supreme court held that a manufacturer can be liable, absent privity of contract, for a plaintiff's economic loss resulting from a breach of an implied warranty under Tex.Bus. & Com.Code Ann. §§ 2.314 and 2.315 (Tex. UCC) (Vernon 1968). In reaching this result, the supreme court noted that the definition of seller under Tex.Bus. & Com.Code Ann. § 2.103(4) (Tex. UCC) (Vernon 1968), is not limited to the immediate seller of a product but is defined as "a person who sells or contracts to sell goods." The supreme court's rationale for its decision is as follows:

> To hold otherwise, would encourage manufacturers to use thinly capitalized "collapsible corporations" to sell their commercially inferior products leaving no one for the buyer to sue for his economic loss. *See*, Roberts, *The Case of the Unwary Home Buyer: The Housing Merchant Did It*, 52 Cornell L.Rev. 835, 836 (1967). Further, by holding that implied warranty remedies apply to economic injuries, we are consistent with, "the well developed notion that the law of contract should control actions for purely economic losses and that the law of tort should control actions for personal injuries." Comment, *The Vexing Problem of Purely Economic Loss in Products Liability: An Injury in Search of a Remedy*, 4 Seton Hall L.Rev. 145, 175 (1972).

We conclude that the same policy reasons for dispensing with the privity requirement in implied warranty also exist with respect to express warranties by sample. Accordingly, we hold that privity is not required where a manufacturer induces the purchase by furnishing samples to a middleman, knowing that the middleman will use the samples to induce sales of the product. In such a situation, as here, Southline knew or should have known that Par-Pak, its distributor, intended to use the sample pans to

---

1. For other cases concerning privity *see* Annot., 16 A.L.R.3d 695 (1967).

sell Southline's products and that purchasers from Par-Pak would likely examine and test the samples in determining whether to purchase Southline's product. In this respect, we perceive no distinction between furnishing samples to induce the purchase, and inducing purchase by representing the quality of goods in advertising and on labels accompanying the goods. *See Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, 401 (1962) (Dispensing with requirement of privity in the latter situation.).

Our holding is also supported by *United States Pipe & Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432 (1937). In that case, the city had an agreement with a pipeline contractor for construction of a water line. Within a short period after installation, the line commenced to leak. The supreme court affirmed a judgment in favor of the City of Waco against the manufacturer of the pipe based on a breach of an express warranty, although no privity existed between them. The contract for sale of the pipe was between the manufacturer and the pipeline contractor and the city was not a party to it. The basis for the holding was that the court would look behind formal contractual relations because the evidence showed that the manufacturer knew that the City of Waco was the ultimate purchaser of the pipe and had made representations to the city as to the quality of the pipe. We hold that the same principle applies to this express warranty by sample. As in *United States Pipe*, the court may look through the formal contractual relations to the substance of the transaction. The middleman is merely a conduit for a sale from the manufacturer to the ultimate purchaser.

In so holding, we expressly disagree with the contrary holding in *Texas Processed Plastics, Inc. v. Gray Enterprises, Inc.*, 592 S.W.2d 412 (Tex.Civ.App.—Tyler 1979, no writ). In that case the Tyler Court of Civil Appeals held that privity of contract was always required for recovery under an express warranty by sample. *Id.* at 415. In so holding, that court, without analysis, followed *Pioneer Hi-Bred International, Inc. v.*

*Talley*, 493 S.W.2d 602, 608 (Tex.Civ.App.—Amarillo 1973, no writ) and *Thermal Supply of Texas, Inc. v. Asel*, 468 S.W.2d 927, 929 (Tex.Civ.App.—Austin 1971, no writ). In our view, all of these cases are contrary to the rationale of the supreme court in *Nobility Homes of Texas* and *United States Pipe Co.*

■ Southline contends that even if privity is not required for it to be sued directly, the record before us will not support a judgment based on express warranty. We agree. The record contains no jury findings as to the creation or breach of an express warranty by Southline. Indust-Ri-Chem argues, however, that its judgment may be supported by the decision of the supreme court in *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). The holding of *Nobility Homes* was predicated on a breach of an implied warranty of merchantability, which was imposed on the manufacturer by Tex.Bus. & Com.Code Ann. § 2.314(a) (Tex. UCC) (Vernon 1968). The supreme court held that the ultimate purchaser could recover from the manufacturer on an implied warranty of merchantability even though no contract existed between them. Despite our holding that privity is not a prerequisite to Indust-Ri-Chem's recovery on an express warranty theory, *Nobility Homes* is not authority to support Indust-Ri-Chem's judgment against Southline. Since the implied warranty in *Nobility Homes* was imposed on the manufacturer by § 2.314, the plaintiff there was only required to prove that the mobile home was not of merchantable quality in order to recover. In the case at bar, Indust-Ri-Chem relies on a breach of an express warranty which is not imposed by operation of law, but arises from specific conduct or representations of the seller. Tex.Bus. & Com.Code Ann. § 2.313 (Tex. UCC) (Vernon 1968). Thus, in order to support the judgment against Southline based on an express warranty, the record must contain either fact findings or evidence establishing as a matter of law that Southline created an express warranty and that Southline breached that warranty. No special issues

on these matters were submitted and neither were they established as a matter of law. Indust-Ri-Chem's cause of action was based on an express warranty by sample or model, Tex.Bus. & Com.Code Ann. § 2.313(a)(3) (Tex. UCC) (Vernon 1968), which provides:

(a) Express warranties by the seller are created as follows:

. . . . .

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

In response to special issues the jury found that Par-Pak submitted sample pans to Indust-Ri-Chem lined with SL–254, that those samples became a part of the basis of the bargain, and that the drums actually delivered were not lined with SL–254 but with SL–259. As noted, *supra*, the court's charge contained no issues inquiring about the creation of an express warranty by Southline and thus the verdict will not support a judgment against Southline based upon a breach of the express warranty.

■ Indust-Ri-Chem asserts that no issue on express warranty by Southline was required because the existence of such a warranty by Southline was established as a matter of law. Indust-Ri-Chem argues that the evidence established as a matter of law that the sample pans delivered by Southline to Par-Pak were the same as the sample pans delivered to Par-Pak by Indust-Ri-Chem. It contends that this established the creation of an express warranty by Southline as a matter of law. We cannot agree. Even assuming Indust-Ri-Chem's contention is correct as to evidence of the identity of the pans, the sample pans would not create an express warranty that the drums would be lined with SL–254 unless use of SL–254 lining became part of the basis of the bargain. Tex.Bus. & Com.Code Ann. § 2.313(a)(3) (Tex. UCC) (Vernon 1968). An employee of Southline testified that he prepared the sample pans for delivery to Par-Pak and that they were lined with SL–259.

Southline employees also testified that they did not know how the sample pans lined with SL–254 got into Indust-Ri-Chem's hands. This testimony could reasonably support an inference that the sample pans lined with SL–254 were not "the basis of the bargain" of the sale of drums from Southline to Par-Pak. Since there is a fact issue as to at least one essential element of the express warranty, the creation of an express warranty by Southline has not been established as a matter of law.

■ Nevertheless, Indust-Ri-Chem argues that Southline has waived its right to complain of the absence of issues as to express warranty because Southline failed to object to the court's charge on that ground. We disagree. Indust-Ri-Chem had the burden of submitting issues as to its express warranty claim against Southline and Southline had no duty to object where the entire theory of express warranty recovery against it was omitted from the charge. *Long v. City of Austin*, 265 S.W.2d 632, 637 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.). Tex.R.Civ.P. 279.

■ Indust-Ri-Chem also argues that because the judgment was in its favor, the omitted issues as to breach of an express warranty by Southline are presumed to have been answered in support of that judgment. Tex.R.Civ.P. 279. We cannot agree. Indust-Ri-Chem fails to distinguish between an independent ground of recovery and a controlling element of such ground. *See* 3 R. McDonald, Texas Civil Practice § 12.36.1 at 431 (rev. 1970). The issues submitted related solely to the breach of an express warranty by Par-Pak. No issue necessary to support a recovery from Southline based on express warranty was submitted to the jury. *See id.* § 12.36.5 at 437. *See also* G. Hodges, Special Issue Submission in Texas § 81 at 210 (1959). Consequently, no issues as to a breach of an express warranty by Southline are deemed found in support of Indust-Ri-Chem's judgment because the entire theory of recovery

was omitted from the court's charge. The trial court cannot make implied findings unless at least one issue necessary to that ground of recovery is submitted. *Denning v. Republic National Bank Building Co.*, 294 S.W.2d 888, 892 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.).

 Contending alternatively for remand rather than rendition, Indust-Ri-Chem asserts that the trial court erred in refusing to submit a jury issue inquiring as to the creation of an express warranty by Southline. Indust-Ri-Chem preserved this error for our review by requesting an issue in writing. The issue was marked "refused," was signed by the trial judge, and included in the transcript pursuant to Tex. R.Civ.P. 272. As noted above, this issue was necessary to determine whether Southline in fact created an express warranty, and thus the trial judge erred in declining to submit it. Consequently, the judgments against Southline are remanded for a new trial.

*Buyer's Unreasonable Conduct as Defense in Express Warranty Action*

Acting on special issues finding that Indust-Ri-Chem was negligent in failing to test the drums before filling them with J–100 and that such negligence proximately caused 25% of the damages caused by the breach of express warranty, the trial judge reduced the jury's damage award by 25%. Indust-Ri-Chem contends that this reduction was erroneous because the buyer's failure to discover that the goods were defective is not a defense in a suit for a breach of an express warranty. Indust-Ri-Chem further argues that even if failure to discover that the goods were defective is a defense in an express warranty action, the reduction of its damage recovery was erroneous because it had no duty to test the drums. We reject the former contention, but agree with the latter.

The weight of authority disclosed by our research holds that because an express warranty is a creature of contract, the buyer may recover for a breach of that warranty even though he fails to exercise reasonable care to discern whether the goods are defective. *See Holms v. Hausen*, 248 N.W.2d 503 (Iowa 1976); *Lewis v. Mobil Oil Corp.*, 438 F.2d 500 (8th Cir. 1971); *R. I. Lampus Co. v. Neville Cement Products Corp.*, 232 Pa. Super. 242, 336 A.2d 397, 406 (1975); *Refinery Equipment, Inc. v. Wickett Refining Co.*, 158 F.2d 710, 712 (5th Cir. 1947); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1012 (5th Cir. 1972); *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 521 P.2d 281, 293 (1974). The rationale of these decisions is that the buyer has a right to rely on the seller's warranty, thus obviating any duty by the buyer to anticipate that the seller has not adhered to his warranty.

 This question has not been passed on in Texas with respect to express warranties. In Texas, the buyer's conduct can be considered, however, in reducing the recovery of consequential damages in an implied warranty action. *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978). The rationale behind that decision is that where the buyer's unreasonable conduct is the sole cause of a portion of his consequential damages, that portion of the damages is not reasonably foreseeable by the seller, and therefore, is not legally caused by the breach of warranty. *Id.* at 328. Thus, the buyer should not be allowed to recover for that portion of his damages solely caused by his own unreasonable conduct. Par-Pak and Southline contend that this rationale is equally applicable to an express warranty action. We agree. We see no valid distinction, in this respect, between an express warranty and an implied warranty because the damages recoverable under either warranty are governed by the same statutory provisions. Tex.Bus. & Com.Code Ann. §§ 2.714, 2.715 (Tex. UCC) (Vernon 1968). We hold, therefore, that the buyer's conduct can be considered in an express warranty case in reducing the buyer's damages to the extent that consequential damages are caused by the buyer's unreasonable conduct rather than by the seller's breach of warranty.

Although we hold that the rule in *Signal Oil* extends to express warranties as in the present case, we expressly disapprove of the issues submitted to the jury with respect to a determination of this question. The pertinent portion of the court's charge is set forth below:

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence, after the 55-gallon lined metal drums in question were received by Indust-Ri-Chem, that Indust-Ri-Chem

(a) failed to inspect the drums as one exercising ordinary care would have done?

Answer "Yes" or "No."

Answer: No.

(b) failed to test the drums as one exercising ordinary care would have done?

Answer "Yes" or "No."

Answer: Yes.

If you have answered either Subdivision (a) or Subdivision (b) of Special Issue No. 4 "yes," then answer the following special issue; otherwise, do not answer it.

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that such failure was a proximate cause of the damages, if any of Indust-Ri-Chem, with respect to

(a) failure to inspect the drums?

Answer "Yes" or "No."

Answer: No.

(b) failure to test the drums?

Answer "Yes" or "No."

Answer: Yes.

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that in placing the order of the 55-gallon lined metal drums in question, that the failure of Indust-Ri-Chem to inform Carman Crago of the use to which the drums would be put was negligence?

Answer "Yes" or "No."

Answer: No.

If you have answered Special Issue No. 6 "Yes," then answer the following special issue; otherwise, do not answer it.

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that such failure was a proximate cause of the damages, if any, sustained by Indust-Ri-Chem?

Answer "Yes" or "No."

Answer: _____.

If you have answered either Subdivision (a) or Subdivision (b) of Special Issue No. 5 "yes," or if you have answered Special Issue No. 7 "yes," then answer the following special issue; otherwise, do not answer it.

### SPECIAL ISSUE NO. 8

What percentage of the damages, if any, sustained by Indust-Ri-Chem do you find from a preponderance of the evidence was proximately caused by the negligence of Indust-Ri-Chem, if any?

Answer by stating a percentage.

Answer: 25%.

These issues are improper because *Signal Oil* does not hold that the seller has a right to submit issues on contributory negligence as a defense to a suit based on a breach of warranty. Tort theories and contract theories must be kept distinct. *Id.* at 327. As we read *Signal*, the supreme court held that where the buyer uses the goods knowing that they are defective or where he used the goods without such an inspection as would have revealed the defects and it was unreasonable so to do, a question arises as to whether all of the buyer's damages were caused by the breach of warranty. *Id.* at 328. This is not the traditional affirmative defense of contributory negligence but rather is a negation of the plaintiff's proof that the plaintiff's damages were caused [2]

---

2. The term "caused" is used here rather than "proximately caused" because we are not sure that "proximately caused" is the appropriate standard. Tex.Bus. & Com.Code Ann. § 2.715 (Tex. UCC) (Vernon 1968) provides:

by the breach of warranty. *Id.* at 328. If the plaintiff's conduct is the sole cause of his own damages, then none of his damages would be caused by the breach of warranty; thus, no recovery on the warranty would be justified or permitted. *Id.* If plaintiff's conduct is the sole cause of only a portion of his damages, then the trier of fact must determine what percentage of the buyer's damages was solely caused by the buyer's conduct. *Id.* at 329. Consequently, *Signal* does not support the contention of Par-Pak and Southline that the buyer's negligence is a defense to an action for breach of an express warranty but rather allows these defendants to prove an unreasonable use of the goods to negate Indust-Ri-Chem's proof of causation of its damages. The proper method of submission of this question would be to inquire if the acts or omissions of the buyer occurred, if they were unreasonable under the circumstances, and what percentage of the buyer's damages were solely caused by his unreasonable use. *Id.* at 329.

The damage reduction in this case was based on a finding that Indust-Ri-Chem failed to test the drums as one exercising ordinary care would have done and that such failure proximately caused 25% of the damages. The jury did not find that Indust-Ri-Chem failed to inspect the drums. Indeed, the evidence showed that the SL–254 and SL–259 linings were indistinguishable by appearance. Consequently, the jury

finding is tantamount to a finding that Indust-Ri-Chem should have performed the same test procedures on the drum linings that were performed on the sample pan linings and that it was unreasonable for them to use the drums without such retesting. Giving a liberal construction to Indust-Ri-Chem's contention that there was no duty to test the drums, Tex.R.Civ.P. 422, we treat this point as raising the contention that there was no evidence to show that use of the drums without testing was unreasonable. We agree that as a matter of law, it was not unreasonable for Indust-Ri-Chem to use the drums without again testing. Indeed, to require Indust-Ri-Chem to retest the lining here would render ineffective warranty by sample or model under these facts.

 Accordingly, we hold that where, as here, a defect in the goods cannot be discovered by inspection, it is not unreasonable for the buyer to use them without testing unless circumstances exist that would put a reasonable man on notice of the defect and cause him to perform a test that would disclose the defect. The evidence shows that Indust-Ri-Chem extensively tested sample pans lined with SL–254 and that based upon the success of these tests, Indust-Ri-Chem ordered 239 lined 55-gallon metal drums with a lining "like samples." The drums that were actually delivered were lined with SL–259 rather than SL–254, and thus were defective in that the

(a) Incidental damages *resulting from* the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(b) Consequential damages *resulting from* the seller's breach include

(1) any loss *resulting from* general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(2) injury to person or property *proximately resulting from* any breach of warranty. [emphasis added.]

For incidental damages and for consequential damages arising from requirements and needs of which the seller has reason to know at the time, the appropriate causation standard is "resulting from" rather than "proximately caused." Neither party has discussed this distinction and our holding makes it unnecessary to consider it. Our research has disclosed only one case dealing with this distinction. With respect to whether the buyer's conduct may be considered to reduce his recovery, that case held that there was no difference in the "resulting from" and "proximately caused" standards. *General Instrument Corp. v. Pennsylvania Pressed Metals, Inc.*, 366 F.Supp. 139, 149 (M.D.Penn.1973). We question, however, the correctness of this holding.

lining actually delivered was not "like samples." The question is, therefore, whether there is any evidence to put a reasonable man on notice of this defect so that he would test the drums before filling them with J–100. Southline argues that because Indust-Ri-Chem had previously tested products new to the company and because its test procedures had been inaccurate in the past, Indust-Ri-Chem should have tested the drums. We cannot agree. Neither of these contentions as to the past conduct of Indust-Ri-Chem put it on notice of the defect in the instant case, i. e., that the drums were shipped with a different lining than the one ordered by Indust-Ri-Chem. Absent facts placing Indust-Ri-Chem on notice of the particular defect, it was entitled to rely on the express warranty by sample that the drums would have the same lining as the test pans. Thus, as a matter of law, Indust-Ri-Chem's failure to test the drums was not unreasonable and the trial court erred in reducing Indust-Ri-Chem's damage recovery by 25%. Because under the facts before us, SL–259 was indistinguishable from the SL–254 lining by visual inspection, we express no opinion as to the circumstances necessary to raise a fact question as to whether the use of the goods without making a simple visual inspection is unreasonable.

### Reliance on Express Warranty

Par-Pak argues that a jury finding that Indust-Ri-Chem relied upon the samples in purchasing the drums was necessary to establish an express warranty by sample. Similarly, Southline contends that the judge erred by refusing to submit a jury instruction, tendered in writing, stating that the jury must find that Indust-Ri-Chem relied upon the samples in order for them to become a part of the basis of the bargain. We reject both contentions because reliance is not the test under the Uniform Commercial Code.

Reliance was an element of an express warranty recovery under the Uniform Sales Act as originally drafted. J. White & R. Summers, Uniform Commercial Code § 9–4, at 277 (1972). The drafters of the Uniform Commercial Code deleted the reliance requirement, substituting the "part of the basis of the bargain" test. Tex.Bus. & Com.Code Ann. § 2.313 (Tex. UCC) (Vernon 1968). Nevertheless Par-Pak asserts that reliance is still a necessary element of an express warranty recovery. In support of its argument that Indust-Ri-Chem was required to submit a jury issue as to reliance on the sample, *Par-Pak cites General Supply & Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). In *General Supply*, the plaintiff submitted an issue on reliance in the trial court and the necessity for such an issue was not before the Tyler Court of Civil Appeals in that case. Consequently, *General Supply* is not authority to hold that reliance is a necessary element to establish an express warranty. Although this question has not been passed on in Texas, the weight of authority does not require reliance as an element to recover on an express warranty. *See* R. Anderson, Uniform Commercial Code § 2–313:18 at 482 (2d ed. 1970) and cases cited therein. A finding that the sample is a part of the basis of the bargain, which finding was obtained by Indust-Ri-Chem, incorporates the reliance requirement to some extent, as discussed *infra*. We conclude, therefore, that a separate issue on reliance is improper to establish an express warranty by sample or model.

Southline's requested instruction on reliance presents a more difficult question. Obviously, if the buyer knows that a representation of the seller is untrue, that representation cannot be a part of the basis of the bargain. Thus, a lack of reliance precludes a sample or model from creating an express warranty. J. White & R. Summers, *supra*. *Agricultural Services Assoc., Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1064 (6th Cir.1977); *see Sessa v. Riegle*, 427 F.Supp. 760, 766 (E.D.Penn.1977), *aff'd without opinion* 568 F.2d 770 (3d Cir. 1978). Consequently, in some instances a jury instruction on lack of reliance may be germane to the "basis of the bargain" issue. If

it is, it must take the form of an instruction rather than a defensive issue on lack of reliance because lack of reliance is an inferential rebuttal to the "basis of the bargain" element of the plaintiff's recovery. Tex.R. Civ.P. 277.

 Whether the sample has in fact been made a part of the basis of the bargain is determined by the general principles applicable to the determination of whether a contract has been made as to any matter. R. Anderson, *supra* at 485. Comments 3 and 6 to § 2.313 of the Code place the burden on the seller to prove that affirmations of fact or samples or models are *not* a part of the basis of the bargain. Thus, only after the seller has introduced proof of the lack of the buyer's reliance on the sample is the seller entitled to a reliance instruction. Accordingly, we hold that upon presentation of proof by the seller that the buyer did not rely on the sample, the seller is entitled to an instruction on reliance, which should be phrased in the negative.

 We need not decide whether the evidence in the present case is sufficient to support the reliance instruction requested by Southline because the requested instruction improperly placed the burden on Indust-Ri-Chem to establish reliance. In this respect, the requested instruction stated that the jury must find that Indust-Ri-Chem relied upon the samples in order for them to become the basis of the bargain. A proper instruction would have required the jury to find that the samples were not the basis of the bargain if Indust-Ri-Chem *did not rely* on the samples, thus placing the burden on Southline and Par-Pak to show a lack of reliance. By failing to request an instruction in substantially correct form, Southline has waived any error on this point. Tex.R.Civ.P. 279.

### Prejudgment Interest

Indust-Ri-Chem argues that the trial court erred in refusing to award prejudgment interest on the damages recovered for breach of warranty. Southline responds that the trier of fact has discretion in awarding prejudgment interest. We over-

rule Indust-Ri-Chem's point on prejudgment interest but specifically reject Southline's contention that such an award is discretionary with the trial judge.

 The Texas rule of recovery of prejudgment interest was enunciated in *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897), as follows:

> [I]n all cases where the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of his money which he is entitled by reason of the wrong done to him. *Id.* at 12.

The rationale behind the general rule that prejudgment interest is available only when the amount of damages is definitely ascertainable at the date of the injury is that the "defendant should not be liable for interest unless he could reasonably be expected to determine the amount owed and pay it to stop the running of interest." D. Dobbs, Remedies § 3.5 at 165 (1973). The damages need not be liquidated. It is sufficient if they are readily ascertainable by a resort to market values. *Id.* at 166.

In *Watkins v. Junker*, the court specifically rejected the argument that prejudgment interest is discretionary. That court held that an award of prejudgment interest on a particular set of facts is a question of law for the court and should not be left to the jury. The only fact question for the jury to resolve is the date of injury, which as a general rule must be raised by the pleadings. *Gulf State Paint Co. v. Kornblee Co., Inc.*, 390 S.W.2d 356, 360 (Tex.Civ. App.—Texarkana 1965, writ ref'd n.r.e.). A simple prayer for interest will, however, support an award of prejudgment interest if the date of injury is uncontroverted. *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80, 95–96 (Tex.1976). In *Black Lake* recovery was sought for extra work and materials used in construction of a pipeline and for prejudgment interest from the date of completion of the pipeline. The supreme court held

that the date of injury was uncontroverted and allowed prejudgment interest.

The liberality of the rule on prejudgment interest is evident in *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 660 (Tex.1979). In *National Resort Communities, Inc.* the appellant sought prejudgment interest from July 2, 1973. The supreme court found nothing in the record to support an award of prejudgment interest from July 2, but upon examination of the record found August 9, 1973, to be the date of injury and awarded prejudgment interest from that date.

 In the case at bar, Indust-Ri-Chem pleaded for interest. It asserted that it was entitled to prejudgment interest from March 2, 1977, the date of delivery of the drums. The elements of the damages recovered by Indust-Ri-Chem include the value of the J–100 that was destroyed, the cost of the drums that were destroyed when the lining was corroded by the J–100, the cost of replacing the J–100 shipment to IBM, and the cost of disposing of the contaminated chemicals. Clearly none of the injuries suffered by Indust-Ri-Chem occurred on March 2. Nevertheless, under *National Resort Communities, Inc.*, if the dates on any of the elements of Indust-Ri-Chem's damages were uncontroverted in the record, an award of prejudgment interest on that particular element would be proper. Indust-Ri-Chem has not presented dates in its fact statement in its brief as to the date of occurrence of any of the elements of its damages and our examination of the record does not reveal that those dates were established without controversy. Consequently, we overrule Indust-Ri-Chem's point with respect to prejudgment interest.

### Deceptive Trade Practices Act

 Indust-Ri-Chem next contends that the trial court erred in refusing to award it treble damages and attorney's fees under the Deceptive Trade Practices Act. We agree. Indust-Ri-Chem pleaded a cause of action under that act and proved a breach

of an express warranty which violates Tex. Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon Supp.1978–1979). It established and was awarded actual damages of $21,145.41. Because treble damages and attorney's fees are mandatory under § 17.50(b)(1), the trial curt erred in refusing to award them. *Woods v. Littleton*, 554 S.W.2d 662 (Tex. 1977).[3] Accordingly, we modify the judgment, trebling the actual damages proved by appellant and awarding appellant attorney's fees, as found by the jury.

However, Par-Pak, relying on *Singleton v. Pennington*, 568 S.W.2d 367 (Tex.Civ. App.—Dallas 1978, writ filed), argues that § 17.50(a)(2) requires that a breach of warranty be knowing or intentional before treble damages can be awarded, or alternatively, that § 17.50(a)(2) is unconstitutional. The unconstitutionality of the Deceptive Trade Practices Act was pleaded by both appellees as an affirmative defense and has been briefed by all parties on this appeal. Thus, the constitutional question is before us. We hold that section 17.50(a)(2) requires no intent to deceive and that, as so construed, it does not violate the due process clauses of the United States and Texas Constitutions. Tex.Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon Supp.1978–1979) provides:

(a) a consumer may maintain an action if he has been adversely affected by any of the following:

. . . . .

(2) breach of an express or implied warranty;

. . . . .

Par-Pak contends that our holding in *Singleton* requires us to read a scienter requirement into § 17.50(a)(2) in order to avoid holding that section unconstitutional. In this respect, Par-Pak argues that "express warranty" is an amorphous concept analogous to "deceptive act or practice" or "unconscionable act," the provisions considered in *Singleton*. It asserts that it did not know that it had breached a warranty

3. We note that the legislature has amended the act, requiring a knowing violation before treble damages *may* be awarded if actual damages are greater than $1,000. [Emphasis added.]

until the jury so determined, and thus the statute did not provide proper notice to justify subjecting it to a treble damage penalty. We cannot agree.

*Singleton* stopped short of reading an intent to deceive into the entire Deceptive Trade Practices Act. 568 S.W.2d at 381. That opinion dealt with section 17.46(a) which makes "false, misleading, or deceptive acts or practices" the subject of a treble damage action and with § 17.50(a)(3), prohibiting "any unconscionable action or course of action by any person." We held that these sections must be read to require an intentional or knowing violation because the conduct they prohibit is not sufficiently defined to put a defendant on notice that he may be subject to a treble damage penalty.

▄▄▄▄ As in *Singleton*, we consider only whether the pertinent section of the Act is impermissibly vague under the facts before us. Thus, the question is whether section 17.50(a)(2) unequivocally put Par-Pak on notice that its conduct would subject it to the penalties of the act. 568 S.W.2d at 379. Express warranty rests upon a different standard than the "deceptive act or practice" and "unconscionable action" standards with which we dealt in *Singleton*. The latter are statutory standards which regulate every phase of a seller's conduct. This is not so with "express warranty." A seller is only liable for a breach of an express warranty when, through his conduct or communication, he has created such a warranty. The seller also defines the parameters of the express warranty he creates and thus he is only liable for breach of an express warranty when his conduct deviates from the standard which he has previously established for himself.

▄▄▄▄ Par-Pak created the express warranty and defined its parameters by its own conduct in supplying the pans containing the sample lining. In order to comply with the warranty, all Par-Pak needed to do was supply 55-gallon drums with the same lining as the sample pans previously provided. Section 17.50(a)(2) put Par-Pak on notice that if it failed to provide drums with the same lining as the sample pans, it would be subject to a treble damage penalty. We hold, therefore, that section 17.50(a)(2) is not unconstitutional on the ground of lack of notice of the penalties set forth in the Deceptive Trade Practices Act.

### Treble Damage Indemnity

Par-Pak asserts that it is entitled to treble damage indemnity against Southline. On the other hand Southline maintains that at the time this suit was filed neither the Deceptive Trade Practices Act nor the Business & Commerce Code provided for indemnity in a breach of express warranty suit. Because these issues are almost certain to arise on remand, we address them. We hold that Par-Pak has pleaded a cause of action against Southline under the Deceptive Trade Practices Act, and may recover treble damages from Southline if it proves these allegations.

▄▄▄▄ Par-Pak is a consumer under the Deceptive Trade Practices Act. Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon Supp.1980) provides:

As used in this chapter:

. . . . .

(4) "Consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.

In its original petition, Indust-Ri-Chem pleaded several violations of the act by both Southline and Par-Pak. Par-Pak filed a third-party action claiming that Southline had sold the drums to Par-Pak and that if Par-Pak was liable to Indust-Ri-Chem, Southline was liable to Par-Pak. No special exceptions to this third-party action were filed. Under this state of the pleadings, Southline had notice that Par-Pak would attempt to prove that Southline had breached an express warranty to Par-Pak in violation of § 17.50(a)(2) of the Deceptive Trade Practices Act. If, upon remand, Par-Pak proves the elements necessary to establish an express warranty recovery under the act, it may recover treble damages from Southline.

### Excluded Documents

Southline complains of the refusal of the trial judge to admit copies of its printed form invoice containing a disclaimer of warranties and a limitation of remedies clause. The documents which Southline sought to admit were not copies of those used in this transaction but were blank copies of standard printed forms which Southline claims are the same as those used in the sale to Par-Pak. Each contains a disclaimer of warranty clause and a limitation of remedy clause which Southline wished to assert as defenses. Southline did not bring these documents before us by bill of exceptions; instead, it obtained an order from the trial judge sending these excluded documents to us. Indust-Ri-Chem and Par-Pak argue that these documents are not properly before us and thus Southline has failed to preserve error for our review. We agree.

Under Tex.R.Civ.P. 373 formal bills of exception are not required where the objection otherwise appears of record. A formal bill of exceptions is required, however, if the record is otherwise insufficient for the appellate court to review the complained of ruling. *Seele v. Seele*, 371 S.W.2d 922 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). Since the excluded documents were not attached to the statement of facts or to the volume of exhibits, they were not a part of the record before us. We know of no procedure such as the one employed here to present excluded evidence to an appellate court. To be properly before us, Southline was required to perfect and to file a bill of exceptions to the trial judge's ruling. Because this procedure was not employed, any complaint of the exclusion of these exhibits has been waived. *Vega v. Royal Crown Bottling Co.*, 526 S.W.2d 729, 733 (Tex.Civ.App.—Corpus Christi 1975, no writ).

### Miscellaneous

Southline argues that the pans tested by Indust-Ri-Chem were models, not samples. We cannot agree. Comment 6 to section 2.313 of the code provides that a sample is drawn from the bulk of goods which is the subject matter of the sale. Anything else offered for inspection is a model. Here, the principal item sold was drum lining, not a drum. The evidence shows that the sample lining was sprayed onto the pans and that the same type of spray would have been used to line the drums had the SL–254 lining been shipped. Thus the lining was drawn from the bulk of the goods and was a sample. Moreover, the designation as a sample, even if erroneous, is harmless error because as we read section 2.313, it recognizes no distinction between an express warranty by sample or model.

Par-Pak complains that Indust-Ri-Chem's recovery for costs of disposing of the destroyed chemicals exceeded Indust-Ri-Chem's pleading for this element of damage. Indust-Ri-Chem does not contest this point but rather agrees that its recovery for cost of disposal should be reduced from $1,650 to $1,322.50. Accordingly, the judgment is so modified.

Indust-Ri-Chem requested, in writing, the submission of four issues relating to misrepresentations by Southline and Par-Pak that fall within the "laundry list" of § 17.46(b). One issue inquired whether Southline had represented that goods were of a particular style or model when in fact they were of another and the second inquired if Southline had represented that the goods had characteristics, ingredients, uses or benefits which they do not have. The other two requested issues inquired whether Par-Pak made the same misrepresentations. Indust-Ri-Chem's petition and proof supported the submission of these issues and they should have been submitted. The error in failing to submit them was harmless however, because Indust-Ri-Chem did not request an issue regarding whether it was "adversely affected" by each of these representations.[4] Tex.R.Civ.P. 434. 177 Tex. Gen.Laws, Ch. 216 § 5 at 603.

---

4. Under the amendments effective August 27, 1979, "producing cause" has been substituted for "adversely affected." Tex.Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp.1980). Be-

*Judgment*

Accordingly, the judgment in favor of Indust-Ri-Chem and against Par-Pak is modified by reducing the damages for disposal of damaged materials from $1,650 to $1,332.50, thus bringing the total amount of actual damages to $20,827.91. Pursuant to the Texas Deceptive Trade Practices Act, this sum is trebled to $62,483.73 and judgment is here rendered for Indust-Ri-Chem and against Par-Pak for $62,483.73 plus attorney's fees of $11,250; however, if application for writ of error is made by Par-Pak to the supreme court, the award of attorney's fees will be increased by $1,450. As modified, Indust-Ri-Chem's judgment against Par-Pak is affirmed and severed. Tex.R.Civ.P. 434. The judgment awarding recovery by Indust-Ri-Chem against Southline and by Par-Pak against Southline is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion. Costs are assessed two-thirds against Par-Pak and one-third against Indust-Ri-Chem.

## ON MOTION FOR REHEARING

In our original opinion we held that Indust-Ri-Chem was not entitled to prejudgment interest because it failed to show that the date on which its damages occurred was established without controversy. On motion for rehearing, Indust-Ri-Chem points out that two invoices which are part of our record establish without controversy that the empty drums and the contaminated J–100 returned to Indust-Ri-Chem by IBM were received by Indust-Ri-Chem on May 13, 1977. Another invoice shows that the replacement shipment of J–100 was shipped to IBM on May 8, 1977. Thus Indust-Ri-Chem asserts that it is entitled to prejudgment interest on its entire damage award because the record shows without controversy that all elements of its damages were ascertainable with reasonable certainty as of May 13, 1977. We agree and modify our prior judgment by awarding Indust-Ri-Chem prejudgment interest of

$2,348.69 from May 13, 1977, to the date of judgment, March 30, 1979, at the rate of six (6) percent and treble this amount to $7,046.07 pursuant to the Deceptive Trade Practices Act. Accordingly, our former judgment is modified and judgment rendered against Par-Pak and in favor of Indust-Ri-Chem for $69,529.80.

In all other respects, the motion for rehearing of Indust-Ri-Chem is overruled. Likewise, the motions for rehearing filed by Par-Pak and Southline are overruled.

cause this transaction arose under the previously worded statute, upon retrial the issue should be framed in terms of "adversely affected" rather than "producing cause."