**T. P. ROTELLO et al., Appellants,**

v.

**RING AROUND PRODUCTS, INC., Appellee.**

**No. AB2427.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Opinion on Motion for Rehearing March 25, 1981.

Rehearing Denied April 15, 1981.

C. Charles Dippel, Sears & Burns, Houston, for appellants.

Osborne J. Dykes, Roberts S. Harrell, Fulbright & Jaworski, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and MILLER, JJ.

## ON REHEARING

J. CURTISS BROWN, Chief Justice.

Upon consideration of the briefs and the record, motion for rehearing is hereby granted. In response to the motion, the judgment of the trial court is affirmed, the opinion filed on February 11, 1981 is withdrawn and the following opinion is submitted in this case.

This case was instituted under the DTPA.[1] Both plaintiffs and defendant appeal from a judgment for the plaintiffs rendered in accordance with a jury verdict.

Ring Around Products, Inc. (Ring Around) processed, tested, and sold soybean seed, labelled as Bragg variety seed, to two retailers, the Clary Seed Co. and the S & S Farm Store. In 1974, the retailers sold some of the seed to T.P. Rotello (T.P.) and Francis Rotello (Francis) (referred to collectively as "the Rotellos"), brothers who each own commercial farms in the bottomland between the Brazos and Navasota Rivers. The Rotellos selected the Bragg variety for cultivation because it was, in their estimation, well-adapted to the local soil and climate conditions. T.P. had experimented with small soybean crops in 1972 and 1973. His 1973 crop produced enough beans to yield a modest profit. The 1974 sowing was Francis' first entry into soybean cultivation and T.P.'s first large-scale venture.

The beans produced by the seed, labelled as Bragg and sold by the Clary Seed Co. (referred to as Clary Bragg) proved to be of another variety—identified as Dare by one expert—which was not well-adapted to the local conditions and produced a poor yield. The Bragg seed sold by the S & S Feed Store (referred to as S & S Bragg) bore fruitfully, as expected. Francis, after making a "test cut" of approximately four acres, decided that it would be economically imprudent to harvest the Clary Bragg crop, and plowed his fields under. T.P. "test cut" one acre of each variety. The test cut produced 31 bushels of S & S Bragg and 14 bushels of Clary Bragg. T.P. harvested slightly less than half of his Clary Bragg and plowed under the rest. Of the harvested crop, he sold half, after mixing it with S & S Bragg, and used the other half for cattle feed.

The Rotellos brought suit against Ring Around under the DTPA claiming that Ring Around had mislabelled the Clary Bragg seed. The jury found that Ring Around had mislabelled the Clary Bragg seed, that the mislabelling caused a $17,200.00 loss to T.P. and a $41,000.00 loss to Francis. The trial court trebled the damages, awarded prejudgment interest, and allowed the Rotellos to make a post-verdict trial amendment increasing the amount of attorney's fees pleaded to an amount equal to that found by the jury. Both parties appeal. Ring Around's appeal will be dealt with first.

Ring Around's first three points of error question whether the Rotellos qualify as *consumers* under the Act. The DTPA establishes a cause of action only for "consumers" as that term is defined in the Act.

1. Deceptive Trade Practices-Consumer Protection Act, 1973 Tex.Gen.Laws, Ch. 143, § 1 at 322. (Hereinafter referred to as "the DTPA" or "the Act").

*Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). In 1974, the Act contained the following pertinent definitions:

(4) 'Consumer' means an individual who seeks or acquires by purchase or lease, any goods or services.

(1) 'Goods' means tangible chattels bought for use.

(2) 'Services' means work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods.

(5) 'Merchant' means a party to a consumer transaction other than a consumer. 1973 Tex.Gen.Laws, Ch. 143, § 1 at 323.

Ring Around contends that the Rotellos failed to request an issue to establish their status as DTPA "consumers," and that, therefore, we must find that they are consumers as a matter of law or deny recovery under the Act. Although a plaintiff's status may become a fact issue in a particular case, no such issue is presented here. It is undisputed that the Rotellos bought the seed for planting and cultivation in individually-owned, commercial farming operations. The Rotellos' status as consumers is, therefore, a question of law.

Ring Around claims that the Rotellos are "merchants" by virtue of the fact that they sell their crops and, therefore, are precluded from qualifying as consumers by § 17.45(5) of the 1973 Act. The definition of merchant suggests a plaintiff's status will be determined by reference to the particular transaction giving rise to the alleged violation. Therefore, if the Rotellos were consumers in the purchase of the seeds, they have a cause of action for such violations of the Act as they may establish.

Ring Around submits that the Rotellos are not consumers as that term is ordinarily defined by the courts. "Consumer" is specifically defined in the Act and that definition, therefore, controls. Ring Around would have this court add an unwritten limitation to the § 17.45(4) definition—that the term "individual" is limited to natural persons not operating sole proprietorships.

The argument is that the 1975 amendments to the DTPA added partnerships and corporations to the definition of consumer, thereby evidencing an intent to exclude all business entities—sole proprietorships, as well as partnerships and corporations—from the earlier definition, which is operative here.

The controlling principles of construction in DTPA cases were set out in *Woods v. Littleton,* 554 S.W.2d 662 (Tex. 1977). The emphasis is on the intention of the legislature as determined from the entire act. Literal meanings of the words used do not necessarily control. Undefined words will be given their ordinary meanings. *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980). No reasonable construction of "individual" would exclude the Rotellos because they operate sole proprietorships and we will not so limit the application of the Act without a manifestation of such intent by the Legislature. The Rotellos are individuals as that term is employed in § 17.45(4) of the Act.

Ring Around also urges that the definition of "services" excludes those rendered for commercial or business use and the definition of goods should be similarly limited. The use of the limiting language in one definition, and its exclusion in another, does not evidence an intent to limit both definitions. To the contrary, it evidences an intent to limit one and not the other. The Act will be applied as written.

Ring Around argues because the Rotellos intended to sell the crop grown from the seed they did not purchase the seed "for use" as required by § 17.45(1) of the Act. It has been held that a purchase for resale was not a purchase *for use* and hence the purchaser did not have consumer status under the Act. *Person v. Latham,* 582 S.W.2d 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.); *South Texas Irrigation Systems, Inc. v. Lockwood Corp.,* 489 F.Supp. 256 (W.D.Tex.1980). A purchase of real estate for development and resale was held to fall in the same category. *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980, writ ref'd n. r. e.). This reason-

ing was applied to a purchase of mortar compound by a tile installer for use in a swimming pool. *L. & M.—Surco Manufacturing, Inc. v. Winn Tile Co.*, 580 S.W.2d 920 (Tex.Civ.App.—Tyler 1979, writ dism'd). The only issue before us is whether a purchase of seeds for cultivation in a commercial farming operation is a purchase "for use" and, therefore, a purchase of goods under the Act.

■ A common-sense approach would seem to favor the view that the purchase of seed for cultivation is a purchase "for use." Although the case involved the interpretation of a sales tax statute, the logic of the court in *Sluis v. Nudelman*, 376 Ill. 457, 34 N.E.2d 391, 392 (1941), would seem to apply here:

> To say that the purchaser of seed, by sowing it in the soil, thereby produces tangible personal property for resale overlooks the fact the original seed has become useless and has lost its identity as seed. By the same reasoning, fertilizer placed upon the soil could be said to be used for resale because, by the chemistry of nature, it increased the crop.

The ordinary meaning of "for use," when related to seeds, includes planting for cultivation. Therefore, the seeds are goods and the Rotellos are consumers, as defined in the Act. Ring Around's first three points are overruled.

Ring Around's fourth and fifth points relate to the sufficiency of the evidence to support an award of damages for lost profits. Ring Around says (1) the proper measure of damages is determined by the common law remedy sought; (2) at common law, the proper measure of damages here would be "lost profits;" and (3) the evidence was legally and factually insufficient to support a "lost profits" damage award. The Rotellos argue they are seeking damages, not for lost profits, but for injury to crops, and they have adequately proved such damages.

■ The Act was intended to allow the adversely-affected plaintiff to recover the amount of actual damages he has alleged and established by proof was factually caused by the defendant's conduct. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.). Actual damages means those recoverable at common law. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931 (Tex.1980). Ring Around would have us limit the Rotellos to a "lost profits" measure of damages and bar their recovery under the "newly-established business" rule.

■ The Rotellos, at trial, pursued recovery for injury to crops. There was testimony that the crop did not properly mature and produce because the seeds from which they were grown, the Clary Braggs, were ill-adapted to the locale. The defect was not apparent until the plants were allowed to fully mature. There was no time to replant. The Rotellos were not new to the business. Both were experienced farmers. Considering the verdict and the circumstances, an implied finding that the sale of the mislabelled seed directly caused the deficiencies in the soybean crop is justified. *See International Harvester Co. v. Kesey*, 507 S.W.2d 195, 197 (Tex.1974). Therefore, the Rotellos were entitled to pursue a damaged crops measure of recovery.

Ring Around's points of error complain that "the evidence was factually and legally insufficient to support the ... award of actual damages ... because ... [the Rotellos'] loss of profits, if any, could only be based upon speculation and conjecture." Such points of error do not raise an issue concerning the legal or factual sufficiency of the evidence to support an award for damaged crops.

■ The Rotellos were only required to establish the fact and extent of their damages with reasonable certainty. The measure of damages in crop loss cases is the market value of the probable yield of the damaged portion of the crop, less the unincurred expenses of cultivating, harvesting and marketing the damaged portion of the crop. The law liberally permits estimates of market value, probable yield and unincurred expenses. *International Harvester Co. v. Kesey*, 507 S.W.2d 195, 197.

Three kinds of evidence of probable yield were introduced: (1) T.P.'s "test cut" of one acre each of S & S Braggs and Clary Braggs, (2) estimates of a neighbor, the Clary dealer and experts, and (3) the Rotellos's subsequent soybean yields. The "test cut" produced 30⅔ bushels per acre of S & S Bragg soybean and 14 bushels per acre of Clary Bragg soybean. There was evidence the Clary Bragg beans were commercially worthless. The two varieties were planted side-by-side. T.P.'s farm and Francis' farm were located within a mile of each other. There was testimony that, had the "test cut" been made earlier, at normal harvesting time, the production would have been significantly greater.

■ The Clary retailer and various experts testified that T.P. and Francis, or farmers in the area, could have expected yields anywhere from 30 to 50 bushels per acre. A neighboring farmer, whose land was adjacent to T.P.'s farm, estimated that a 38 to 39 bushel per acre yield would be expected. The Clary dealer estimated that the Rotellos could have produced 40 bushels per acre with genuine Bragg seed. The evidence of production on the two farms in years after 1974 substantiated the estimates even though the evidence indicated the later crops were grown under slightly different conditions. Given the proximity of the farms, the results of the test cut, the nature of the estimates, the fact that the experts all used the Brazos River bottom area as the basis of their estimates and the absence of objections to the introduction of such evidence, the evidence was sufficient, legally and factually, to establish the Rotellos's probable yields with reasonable certainty.

■ With regard to the sufficiency of the evidence of unincurred expenses, the Rotellos did not have to offer evidence of cultivation costs. These were actually incurred; the crops were grown to maturity. T.P. incurred one-half of his harvesting cost. There was evidence that the harvesting cost would have been $10.00 per acre. There was evidence that transportation costs would have been 20 to 25 cents per hundredweight and that a bushel weighed 60 pounds. There was also substantial evidence that the market value of soybeans ranged from $7.87 per bushel to $6.76 per bushel during October through December 1974, and that the prevailing market price in November of 1974 was $7.52 per bushel. The Rotellos offered sufficient evidence to establish their unincurred expenses and the market value of their probable yields with reasonable certainty.

■ Ring Around's sixth point of error complains of the court's failure to adequately define the word "loss" and failure to adequately instruct the jury on deducting the value of the actual yield of the crop from the damages award. Ring Around's objection and its tendered definitions and instructions were based on a "lost profits" measure of damages issue and, therefore, raised no issues concerning the injured crop measure. Tex.R.Civ.P. 277, 279. The issue was substantially correct as submitted and adequately instructed the jury.

■ Ring Around, in its seventh point, contends the trial court erred in framing the causation issue in terms of producing cause because the common law measure of damages claimed by appellants to be applicable here—lost profits—is a type of consequential damages and contains an element of foreseeability. Ring Around would require the court to submit a proximate cause issue as it contains an element of foreseeability which producing cause does not. For reasons previously stated we have rejected the basic assumption of this proposition. Foreseeability was not required by the 1973 DTPA; the Act only required the plaintiff prove "actual damages" *factually* caused by the defendant's acts. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290. Therefore, "producing cause" was a fair submission of the statutory requirement. Ring Around's seventh point is overruled.

■ Ring Around's eighth point complains the submission of Special Issue No. 1 is evidentiary and will not support a judgment. The issue, as submitted, read:

Special Issue No. 1

Do you find from a preponderance of the evidence that the defendant Ring Around Products, Inc., mislabelled soybean seeds purchased and planted by plaintiffs T.P. and Francis Rotello?

The acts enumerated in § 17.46(b) are deceptive "per se." Since the commission of the act itself establishes a violation of the DTPA, the court should inquire only into the commission of the act. *Spradling v. Williams*, 566 S.W.2d 561 (Tex.1978). The issue inquires into an act which, if committed, violates §§ 17.46(b)(5), and (b)(7) of the Act. *See* Tex.R.Civ.P. 277, 279. Ring Around's eighth point is overruled.

Ring Around's ninth point contends it was entitled to a submission of the "bona fide error" defense incorporated into § 17.-50A of the Act in 1977, and removed in 1979. The sale occurred in 1974. Such defense is not applicable to this case. *Johns-Manville Sales Corp. v. R. J. Reagan, Inc.*, 577 S.W.2d 341 (Tex.Civ.App.—Waco 1979, writ ref'd n. r. e.). This point is overruled.

Ring Around's tenth point argues the Act prohibits only acts committed knowingly or with some element of scienter, and, therefore, the trial court erred in refusing to submit an issue inquiring into the knowledge or scienter element. "Certainly if [the legislature] meant for intent [or knowledge] to be a requirement for all violations it would not have written it into four specific items without requiring it under the other subdivisions of § 17.46(b). . . . Section 17.46(b) by its own terms extends to certain specified acts, not just those acts done knowingly or with intent to deceive." *Pennington v. Singleton*, 606 S.W.2d 682, 689–90. The § 17.46(b) subsections involved in this case do not require knowledge. Tex. Bus. & Comm.Code Ann. §§ 17.46(b)(5), (b)(7) (Vernon Supp.1980–81). Ring Around's tenth point of error is overruled.

Point of error eleven contends the Act is unconstitutionally vague and imprecise and establishes a penal remedy for acts done innocently, in good faith, and without fault. The Act was found to be constitutional in the face of these arguments in cases involving innocent violations of §§ 17.46(b)(5) and (b)(7). *Pennington v. Singleton*, 606 S.W.2d 682. Ring Around's eleventh point is overruled.

In the twelfth point of error, Ring Around argues the trial court cannot award prejudgment interest in a lost profits case because damages are not "definitely determinable at a definite time." Generally, prejudgment interest is recoverable as a matter of right where damages are established as of a definite time and the amount thereof is definitely determinable. *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80, 95–96 (Tex.1976). It is sufficient if the damages are readily ascertainable from then prevailing market values. The rule is liberal. *Indust-Ri-Chem Laboratory, Inc. v. Par-Pak Co. Inc.*, 602 S.W.2d 282, 294 (Tex.Civ.App.—Dallas 1980, no writ). The Rotellos submitted a prayer for prejudgment interest from "the normal time of harvest in 1974 to the date of judgment" in their petition. It is undisputed the normal harvesting time for soybeans was in November in the year of the injury, 1974. The judgment awarded interest from December 31, 1974. The Rotellos waived interest accruing before that time. Damages were definitely determinable by December 31, 1974. Therefore, the award was proper. This point is overruled.

Ring Around's thirteenth point cites as error the trial court's refusal to strike the testimony of plaintiff's counsel on attorney's fees because he refused to produce the underlying records on request. When asked if he would describe the services he performed in preparing and presenting the case, he stated he was using a summary prepared from office time sheets. Ring Around objected to the use of the summary. When properly qualified under the "present recollection refreshed" rule, the witness need only make the paper or memoranda used on the stand available to the opponent. *Winters v. Winters*, 282 S.W.2d 749, 752 (Tex.Civ.App.—Amarillo 1955, no writ). There is no complaint the

summary was withheld. This point is over-ruled.

▮▮▮▮ Ring Around's fourteenth point complains the trial court erred in allowing a post-verdict trial amendment to increase the amount of attorney's fees pleaded because such trial amendment is prohibited by Rule of Civil Procedure 67. Ring Around cites *Burk Royalty Co. v. Walls*, 596 S.W.2d 932 (Tex.Civ.App.—Fort Worth 1980, writ granted) as authority for the proposition that the plaintiff cannot increase the *ad damnum* after the verdict, unless the defendant fails to object. However, the *Burk Royalty* court pointed out, while granting a post-verdict, prejudgment trial amendment was not proper in that case (where its effect was to increase exemplary damages from $100,000.00 to $150,000.00), it did not intend to imply that such a trial amendment would never be proper. The filing of a trial amendment is within the sound discretion of the trial court. *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 758 (Tex.Civ.App.—San Antonio 1977, no writ). A post-verdict, prejudgment trial amendment may be allowed. *Shaw v. Tyler Bank and Trust Company*, 285 S.W.2d 782, 790 (Tex.Civ.App.—Texarkana 1955, writ ref'd n. r. e.). Where the appellant does not show injury, no abuse of discretion will be found. *Tom's Toasted Peanuts, Inc. v. Doucette*, 469 S.W.2d 399, 402 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.). Here, the Rotellos were entitled to reasonable attorney's fees. Tex.Gen.Laws, Ch. 143, § 1 at 327. The Rotellos pleaded for attorney's fees of $10,000.00 for T.P. and $20,000.00 for Francis. The Rotellos proved and, the jury found reasonable attorney's fees were $10,512.00 for T.P. and $24,553.00 for Francis. The increase was negligible and only served to properly compensate the plaintiff for the proven expenses incurred in pursuing a legitimate consumer claim in court. No abuse of discretion was shown. Ring Around's fourteenth point is overruled.

▮▮▮ Ring Around's fifteenth point contends that the Rotellos could not predicate a private cause of action on the Texas Seed Law and that the trial court erred in rendering judgment for the Rotellos on that basis. The judgment does not recite any reliance on the Texas Seed Law. The pleadings do not raise the issue. The record does not reflect that the issue was raised in the trial court. We, therefore, overrule point fifteen.

▮▮▮ The Rotellos appeal, claiming they are entitled to have prejudgment interest trebled as part of actual damages. The trial court calculated prejudgment interest on the damages awarded by the jury and trebled the damages, but not the interest. The Rotellos contend prejudgment interest is compensation for the detention of the damage money during the pendency of the suit and therefore is part of the actual damage suffered by the plaintiffs in bringing suit. In *Indust-Ri-Chem Laboratory, Inc. v. Par-Pak Company Inc.*, 602 S.W.2d 282, 298, the court did treble prejudgment interest in computing the proper DTPA award. However, no issue was presented on this point in that case. We will not follow the court's approach in *Par-Pak*. Even a liberal construction of the Act would not justify trebling prejudgment interest. It is true the Rotellos lost the use of the damage funds while pursuing the claim. However, such interest is not part of the damage accruing as a result of the mislabelling, nor is it a reasonable and necessary expense incurred in using the product before discovering the breach. Therefore, it is not damage factually caused by the offensive act. The Rotellos' point of error is overruled.

The judgment of the trial court is affirmed.