SUPERIOR TRUCKS, INC., Appellant,

v.

Jumel ALLEN, et al., Appellees.

No. 01–82–0297–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1983.

Rehearing Denied Dec. 29, 1983.

Wayne Adams, James Earl Elskes, Houston, for appellant.

Larry Watts, Houston, for appellees.

Before SMITH, BULLOCK and COHEN, JJ.

## OPINION

BULLOCK, Justice.

This is an appeal from a judgment entered after a jury verdict for the appellees in an action for violations of the Texas Deceptive Trade Practices Act (DTPA) and express breach of warranty in connection with the sale of a truck.

In 1977, Jumel Allen, one of the two appellees, decided to enter the hauling business. Richard Allen, the other appellee and Jumel's brother, was going to do the driving. Early in April of 1977, Jumel contacted a local carrier, T. Inc., and determined that if he obtained a used truck that was not too old and was in good condition, this company would give him a hauling contract. Jack Cobb of T. Inc., testified that although his firm was willing to lease a 1973 used truck with a new dump body, they would not have given Jumel a contract on a truck as old as 1969.

After looking elsewhere, Jumel contacted Bert McDonough, salesman for the appellant, Superior Trucks, Inc., and explained to him what he needed. McDonough told him that he was familiar with the T. Inc. hauling business, had sold a lot of trucks to people who worked there, and that he knew just what Jumel needed. Jumel called several times and looked at trucks on the appellant's lot, but rejected them because they were too old for the intended purpose. McDonough later telephoned Jumel and told him that he had located a good truck for him, a 1973 truck, with new tires, and a new dump bed added by National Truck. On McDonough's instructions, Jumel and Richard went to see the truck at National's yard, and Richard test-drove it. When Jumel called to discuss the sale, McDonough again assured him, "I know it's a good truck ... I looked at it and it's a good truck."

After accumulating the $3,500 down payment, Jumel went to close the sale with the appellant. The remainder of the financing was arranged by the appellant through Associates Finance. The owner of the appellant company personally intervened to transfer title to the truck from National to the appellant, and Jumel and Richard picked up the truck at the appellant's yard shortly thereafter.

Although the appellant's credit manager testified that it was his company's policy that all trucks have a "make-ready" and that no truck leaves the lot in a dangerous condition, and McDonough testified he was responsible for giving the credit manager all the information on the specifications of the truck, including year, no employee of the appellant bothered to examine the truck to determine that it was, in fact, a 1973 model or that the body was bolted to the frame of the cab as opposed to being welded. McDonough testified that he did not examine the truck to ascertain these matters.

As planned, Richard began driving the truck, hauling building materials for T. Inc., and the business was operating at a profit. The managers of T. Inc. testified that the appellees did a good job for them, and that the contract could reasonably be expected to continue. After seven weeks, however, the truck collapsed in the middle while

Richard was hauling a load. Richard's head hit the back of the cab, the force of the blow breaking a plate in his mouth. Although the collapse ruined the brakes and left the fuel tank dragging on the ground and leaking diesel fuel, Richard managed to steer the truck off the road and escaped by breaking out a window.

After the collapse, the appellees discovered for the first time that the truck frame had been welded instead of bolted as it should have been. It had collapsed along the weld seam. Jumel called the appellant to find out what to do and was told to have the truck towed to National's yard to "fix up." The wrecker driver placed the non-drivable truck in the garage at National, but it was later moved into the fenced yard. At National, Jumel rebuffed promises of money in his pocket and a new truck if he told a lie as to the true condition of the truck.

Jumel called McDonough again and told him that the truck was "totaled." McDonough told Jumel that if he did not do what National asked him to do, he could not help. Jumel, however, still refused to lie and was very upset by these communications. He called his attorney for assistance in getting a truck from the appellant. Shortly thereafter, he learned that the truck had disappeared from National's yard. The truck has not been located.

Subsequently, the appellees learned that the truck was originally titled in Florida as a 1969 model, but the title had been altered to show it as a 1973 model sometime after it came into National's possession.

In addition to the DTPA and breach of warranty claims, the appellees also pled fraud. The trial court submitted special issues to the jury under the DTPA, inquiring whether or not Jumel was adversely affected by misrepresentations found by the court; whether or not Richard was adversely affected by the misrepresentation of the uses, characteristics or benefits of the truck, and as to the amount of money which would fairly compensate each of them for any loss suffered; and regarding the breach of express warranty that the truck was suitable for hauling. Issues addressing malice, mental anguish, and exemplary damages were also submitted.

The jury found for the appellees on all issues. Jumel elected to claim exemplary damages awarded by the jury for the breach of warranty, rather than treble damages under the DTPA. The trial court disregarded special issue no. 11 which awarded Jumel compensation for mental anguish.

The court entered judgment for compensatory damages in the amount of $21,568.80 and exemplary damages of $73,137.60 for Jumel and for $5,000 under the DTPA for the personal injuries suffered by Richard when the truck collapsed.

The appellant urges thirteen points of error, and the appellees present two cross-points.

The judgment of the trial court is affirmed as reformed.

In his first point of error, appellant argues that the trial court erred in rendering judgment which permitted appellee, Jumel Allen, to recover exemplary damages for a breach of warranty which, according to the jury, "was a malicious or wanton disregard of the rights of plaintiff, Jumel Allen." We agree.

■ Texas law is clear that exemplary damages are not allowed for breach of contract. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563 (Tex.1981); *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 526, 168 S.W.2d 629, 631 (1943). Even if the breach is malicious, intentional or capricious, exemplary damages may not be recovered unless a distinct tort is alleged and proved. *Amoco Production Co., supra; City Prods. Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980); *A.L. Carter Lumber Co., supra*. A suit for breach of an express warranty, such as here, is based on contract and is governed by the law of contracts. *Smith v. Kinslow*, 598 S.W.2d 910 (Tex.Civ.App.—Dallas 1980, no writ). Thus, absent pleading and proof of an independent tort, the breach of an express warranty, even committed mali-

ciously or wantonly, will not support an exemplary damages recovery.

The appellees urge that such a distinct tort, namely fraud, was both pled, proved, and found by the jury, and, therefore, the award of exemplary damages was proper. Alternatively, they urge that any element of fraud not found expressly by the jury is supported by the evidence and should be implied pursuant to Tex.R.Civ.Pro. 279. Neither of these contentions, however, is supported by the record or the law of this State.

In order to recover on an express warranty, the appellees had the burden of establishing:

(1) that a warranty was made;

(2) that it was breached; and

(3) that, as a result of the breach, an injury resulted.

*Indust-Ri-Chem. Lab v. Par-Pak Co., Inc.,* 602 S.W.2d 282 (Tex.Civ.App.—Dallas 1980, no writ). The appellee, Jumel Allen, sustained this burden by pleading and proving his cause of action, the result of which prompted affirmative responses to the following special issues:

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Defendant, Superior Trucks, Inc., by and through its authorized agent, expressly warranted that the truck was suitable for use by Plaintiff, Jumel Allen, in his hauling business?

\* \* \* \* \* \*

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Defendant, Superior Trucks, Inc., breached the express warranty?

\* \* \* \* \* \*

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Defendant's, Superior Trucks, Inc's, breach of express warranty was the proximate cause of damages, if any, suffer by Plaintiff, Jumel Allen?

The elements of actionable fraud, however, are the following:

(1) that a material representation was made;

(2) that it was false;

(3) that, when the speaker made it, he knew it was false or made it recklessly without knowledge of its truth and as a positive assertion;

(4) that he made it with the intention that it should be acted upon by the party;

(5) that the party acted in reliance upon it; and

(6) that he thereby suffered injury.

*Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 516 S.W.2d 138 (Tex. 1974). The appellees argue that all of the elements of actionable fraud were found by the jury pursuant to its answers to the three special issues outlined above, and, in addition, by its answers to special issues no. 5 and 12 which inquired:

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Plaintiff, Jumel Allen, reasonably relied upon the representation made by Defendant, Superior Trucks, Inc., that the truck in question was fit for use in his hauling business to his detriment?

Answer: "We do," or "We do not."
[To which the jury answered] "We do."

\* \* \* \* \* \*

### SPECIAL ISSUE NO. 12

Find from a preponderance of the evidence what sum of money, if any, that Plaintiff, Jumel Allen, should be awarded against Defendant, Superior Trucks, Inc., as exemplary damages?

"Exemplary damages" means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages.

Answer in dollars and cents, if any.
[To which the jury answered] "$73,-137.60."

Analysis of each necessary element of fraud, in light of the special issues and instruction that were submitted, discloses the error in the appellees' argument:

■ (1) Material representation: The jury was instructed, *inter alia,* that express warranties are created by "any affirmation of factor promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain." In order to satisfy retrospectively the "material representation" element of fraud, the appellee contends:

By definition, an express warranty is made when an affirmation of fact or a promise is made by a seller to a buyer which relates to the goods (is material) and becomes part of the basis of the bargain (induces the buyer to enter into the transaction). The jury, in answer to Special Issue No. 4, found that Appellant expressly warranted that the truck was suitable for use by Appellee Jumel Allen in his hauling business, which by definition was a material representation, made the basis of the bargain, for the purpose of inducing Appellee to buy the truck.

Finding "an affirmation of fact or a promise relating to the goods" does not establish automatically that the representation is material. The appellant's express warranty that the truck was suitable for use by the appellee in his hauling business is, under this record, material; however, that precise issue was not presented to the jury and thus was not determined.

■ (2) False representation: As to this element, the appellee refers this court to special issue no. 6, the answer to which found that the appellant had breached the express warranty, the appellee thereby concluding that "the jury further found that appellant's representation was false." Thus, it is the appellee's position that a finding of breach of warranty is tantamount to a representation being false. To support this position, the appellee cites *Valley Datsun v. Martinez,* 578 S.W.2d 485, 490 (Tex.Civ.App.—Corpus Christi 1979, no writ). In that case, however, the *reverse* was said; that is, the court held that a finding of a false representation is tantamount to a breach of warranty. It simply does not follow that the reverse of the holding in *Valley Datsun* now urged by the appellee (i.e., that a breach of warranty is tantamount to a false representation) is always true. Indeed, an express warranty can be breached without the existence of any false representation whatsoever.

■ (3) Knowing falsity or reckless disregard of the truth: With respect to this crucial element of fraud, the appellee refers us to special issue no. 9, in which the jury concluded that the appellant's breach of warranty "was a malicious or wanton disregard of the rights of [appellee]." The appellee views this finding as tantamount to a finding that the speaker either knew the representation was false or made it recklessly without any knowledge of its truth. We disagree. A representation can be made with ill will, spite or grudge (i.e., malice), and not be made with knowledge of its falsity. Furthermore, a finding that a representation is made recklessly or in callous disregard of an individual's rights (i.e., wantonly) does not equal a finding that the statement was made without any knowledge of its truth (i.e., recklessly). Indeed, this court has previously stated that "whether [a breach was] committed intentionally, maliciously or *with reckless disregard for the rights of* [the plaintiffs] is immaterial" absent definite pleadings, proof and findings of a distinct tort. *Tashnek v. Tashnek,* 630 S.W.2d 653 (Tex.App.— Houston [1st Dist.] 1981, no writ).

■ (4) Intended reliance: With respect to the requirement that the representation was made by the speaker with intent that it should be acted upon, there is nothing in the jury's findings which even arguably resembles such a finding.

■ (5) Reliance; Injury: The remaining elements of fraud were found by the jury. That is, the jury found that the appellee relied upon the representation and was injured thereby.

Concluding that there are insufficient jury findings to support a recovery based on

fraud, we turn to the appellee's alternative argument, "that any elements of actionable fraud not found expressly by the jury in answers to special issues, are supported by the evidence and are implied findings pursuant to Rule 279." Again, we disagree.

Tex.R.Civ.Pro. 279 provides, in relevant part:

> ... but where such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and *necessarily referable thereto,* are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment. (Emphasis supplied).

It is apparent that before findings will be deemed, one or more of the special issues answered by the jury must be "necessarily referable" to the ground of recovery or defense of which the omitted issues form component parts. We understand the appellee's brief as referring this court to the reliance issue which, in the appellee's opinion, is an unnecessary element of a breach of warranty action and, therefore, is "necessarily referable" to fraud. The appellee cites *Indust-Ri-Chem Lab., supra,* for the proposition that reliance is not a necessary element of breach of warranty, but fails to mention the language contained therein that "this question has not been passed on in Texas." Granted, the weight of authority does not require reliance as an element to recover on an express warranty; see R. Anderson, *Uniform Commercial Code* § 2–313:18 at 482 (2d ed. 1970); however, the list of essential elements contained in *General Supply and Equipment Co., Inc. v. Phil-*

*lips,* 490 S.W.2d 913 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.), which includes reliance, though perhaps not authority for the necessity of this element, *Indust-Ri-Chem. Co., supra,* would nonetheless compel the inclusion of the issue in the charge until such time as our Texas Supreme Court rules otherwise.

The purpose of the "necessarily referable" requirement in Rule 279 is to give parties, against whom issues are to be deemed, fair notice of a partial submission, so that they have an opportunity to object to the charge or request submission of the missing issues to the ground of recovery or defense. Once a party is on notice of the independent ground of recovery or defense due to the existence of an issue "necessarily referable" thereto, if that party fails to object or request submission of the missing issues, he cannot be heard to complain on appeal, as he is said to have consented to the court's findings on the missing issues. *See* generally G. Hodges, *Special Issue Submission in Texas* (1959).

We hold that the inclusion of the reliance element in an express warranty suit is not such that the appellant would be put on notice of the submission of the fraud theory as an independent ground of recovery. The submission of the reliance issue could have been predicated upon the uncertainty existing as to whether or not such element was required to be submitted on the warranty theory.

The lack of intent on the part of the appellee's trial counsel to submit reliance as a necessary element of fraud, rather than express warranty, is further supported by the fact that the reliance element was conditioned upon an affirmative response to special issue no. 4 which inquired into the existence of an express warranty. Had the appellee's counsel viewed the reliance issue as a partial submission of an *independent* ground of recovery (i.e., fraud), he would not likely have conditioned said issue on an affirmative response to an express warranty issue. This method of submission tends to support the conclusion that the reliance element was "referable" to

the express warranty recovery, rather than a fraud recovery.

 Concluding that all the elements of fraud were not found by the jury and, alternatively, that the appellee is not aided by the operation of Rule 279, we hold that the trial court erred in allowing recovery of exemplary damages based on a "malicious or wanton" breach of express warranty, *Amoco Production Co., supra,* and we sustain the appellant's first ground of error.

The appellant's second and third points of error urge that the trial court erred in failing to grant its motion for an instructed verdict based upon the appellee's failure to present evidence of damages regarding loss of bargain based upon misrepresentation of "year model" (point of error no. 2) and of "characteristics, benefits or uses" (point of error no. 3).

 The overruling of a motion for an instructed verdict will be reviewed on appeal *only if* it was recited in a formal order or in the judgment. *Ellis Drilling Corporation v. McGuire,* 321 S.W.2d 911 (Tex.Civ.App.—Eastland 1959, writ ref'd n.r.e.); *Lewis v. Smith,* 198 S.W.2d 598 (Tex.Civ.App.—Fort Worth 1947, writ dism'd); *Southwestern Materials Co. v. George Consol, Inc.,* 476 S.W.2d 454 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Steed v. Bost,* 602 S.W.2d 385 (Tex.Civ.App.—Austin 1980, no writ). The record presently before this court is void of this requisite recitation in either the form of an order entered by the trial court or in the judgment. Since this complaint was not so preserved in the record, it cannot be considered on appeal.

Points of error two and three are overruled.

Regarding the appellant's points of error four through seven, the following is relevant: Special issue no. 3a and b inquired of the jury:

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jumel Allen for the losses he has sustained, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

*Answer separately in dollars and cents, if any, with respect to each of the following elements:*

a. Loss of bargain based on year model:

Answer: $6,500.00.

b. Loss of bargain based on characteristics or benefits or uses which it did not have:

Answer: $6,500.00

In addition, the jury was instructed that "loss of bargain" means "the difference between the value of what is received and its value as represented."

 The appellant urges, in points of error four through seven, that there is no evidence to support the jury's findings with respect to damages for loss of bargain based on "year model" and on "characterics, benefits or uses." In the alternative, the appellant submits that these findings are "so against the great weight and preponderance of the evidence as to be manifestly unjust." Preliminarily, we note that the appellant mislabels the latter two points. When the vital fact challenged is one on which the complaining party's opponent had the burden of proof, the point raising factual insufficiency is properly labeled an "insufficient evidence" point. However, when the challenged fact was one on which the complaining party had the burden, the proper point is that the adverse finding was against the great weight and preponderance of the evidence. McDonald *Tex.Civ. Prac.* § 18.14. Here, the burden of producing sufficient evidence to support findings of the elements of the proper measure of damages rested on the appellee, as plaintiff. *Chrysler Corp. v. Schuenemann,* 618 S.W.2d 799 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Thus, since the appellant's opponent had the burden of proof on the damage issue, points six and seven which are improperly labeled "great weight" points, will be considered as insufficient evidence points.

The applicable standards of review under such points . . . :

1) Legal insufficiency points: Where legal insufficiency points are raised, such as "no evidence" or "as a matter of law", this court is charged with reviewing only the evidence which tends to support the findings. We must also give effect to all reasonable inferences that may be drawn properly from the findings and must disregard all contrary or conflicting evidence. *McClure v. Allied Stores of Texas*, 608 S.W.2d 901, 904 (Tex.1980); *Butler v. Hanson*, 455 S.W.2d 942, 944 (Tex.1970); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

2) Factual insufficiency points: Where factual insufficiency points are raised, such as "insufficient evidence" or "great weight", this court is charged with examining all the evidence, including any evidence contrary to the finding of the jury to the special issues. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

▇▇▇ From a substantive standpoint, the best summary of principles is found in *Chrysler Corp., supra,* wherein Chief Justice Coleman stated:

> The general principle governing damages for breach of contract is that the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed. In a case involving a sale of personal property the measure of damages is the difference between the cash market value of the article as delivered and what its value would have been if it had been as warranted. In the absence of other proof of market value as warranted, the price agreed upon between the parties may be taken as the market value of that for which the parties contracted. If an article sold and warranted has some value, the complaining party is not entitled to recover the full amount he has paid, but is limited to the difference in value as above stated. If the article has no value at all, then the amount paid may be recovered. *Smith v. Kinslow,* 598 S.W.2d 910 (Tex.Civ.App.—Dallas 1980, no writ).

The issue under consideration is a simple one: What was the appellee's/plaintiff's "loss of bargain?" That is, what is the difference between the value of the truck as delivered and the value of the truck as warranted? More specifically, what is the difference between the value of a 1969 truck (the truck as delivered) and a 1973 truck (the truck as warranted)? Upon the close of the appellee's case, no evidence as to this price differential existed. Clearly the appellee had not carried his burden in this respect. *Chrysler Corp., supra.* Thereafter, the *appellant* offered evidence as to damages through the testimony of Barry Morgan, a self-employed damage appraiser of heavy vehicles. Morgan testified that the market value of a 1973 truck in 1977, would be approximately $2,000 more than a 1969 model. Although *some* evidence as to this price differential was presented, the jury's findings of $6,500 pursuant to special issue no. 3A cannot withstand a "no evidence" challenge.

▇▇▇ Similarly, what is the difference between the value of the truck's characteristics, benefits or uses as delivered and its characteristics, benefits or uses as warranted? In this respect, the appellee, Jumel Allen, testified that the truck's value *to him* was between twenty and thirty thousand dollars when he purchased it, and, after the collapse, the value *to him* was nothing. The appellant argues that the rule in Texas is that an owner of goods must show that he is qualified to testify as to their value, citing the following language of this court in *Bavarian Autohaus, Inc. v. Holland,* 570 S.W.2d 110, 115 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ):

> In Texas the qualifications of a witness to give value testimony are knowledge of the general value-standard of things in that particular class and knowledge of the particular thing to be valued. The witness must have a knowledge of the market value (if there is one) in the vicinity, and it must be based in some degree on personal observation.

The appellant, however, ignores the language immediately following the above cited passage, wherein it is said:

When the owner of goods seeks to testify to their value, *as distinguished from their value to him,* the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value. 37 A.L.R.2d 998, citing many cases. *Id.* (Emphasis supplied).

Clearly, the appellee, Jumel Allen, testified as to the value of the property *to him* and thus he need not have been qualified to do so:

By Mr. Watts:

Q. What was the value of the truck *to you?*

Mr. Adams: We object to that, to him answering that on the grounds that that is not the measure of damages in the case, and would not be relevant and not be qualified to give an expert opinion.

The Court: As the owner, I will let him answer.

Answer him, please.

A. To me? The whole total cost for me?

Q. What was the value of that truck *to you* in 1977?

A. About twenty or thirty thousand.

Q. Is that what you obligated yourself to pay for it?

A. Yes. (Emphasis supplied).

In this respect, we note, as heretofore mentioned, that in the absence of other proof of market value as warranted, the price agreed upon between the parties may be taken as to the market value of that for which the parties contracted. *Chrysler Corp., supra.* The appellee also testified as follows:

By Mr. Watts:

Q. What was the value of the truck *to you* after it broke down on Federal Road and Interstate 10, *to you?*

Mr. Adams: Objection, Your Honor. He has not been qualified to give an opinion before and after of any damages.

The Court: I'll overrule that objection.

By Mr. Watts:

Q. What was the value *to you* in June of 1977, of that truck, after it had broken down on Federal Road and Interstate 10?

A. Nothing. Nothing. I was out . . . (Emphasis supplied).

Thus, $6500 damages found by the jury for the loss of the bargain due to misrepresentation of benefits, uses or characteristics is conservative and within the range of testimony presented.

The appellant's points of error four and six, addressing "year model", are sustained. Points five and seven, addressing "characteristics, benefits and uses", are overruled.

The appellant, in his eighth point of error, argues that the appellee, Richard Allen, does not qualify as a "Consumer" under the DTPA. Concluding that the inquiry requires a negative response, the appellant thereby challenges the $5,000 award under the DTPA for the personal injuries suffered by Richard Allen as a result of the truck's collapse.

■ "Consumer" is specifically defined in the Act and that definition therefore controls. *Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Section 17.45(4) defines consumer as "an individual, partnership or corporation who *seeks or acquires* by purchase or lease, any goods or services." In *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex, 1981), the Supreme Court instructed:

We have also recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA. One requirement is that the person must have sought or acquired goods or services by purchase or lease. . . . Another requirement recognized by this Court is that the goods or services purchased or leased must form the basis of the complaint. . . . If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress.

Both requirements are met with respect to the appellee, Richard Allen. The record reflects that the appellee, Richard Allen, was going to drive the truck acquired for the purpose of going into the hauling busi-

ness under a contract with T. Inc. Before the purchase, both the appellees arranged for the job with T. Inc.; both the appellees went to National's yard to see the truck; Richard inspected and test-drove the truck; he also went with his brother to receive delivery of the truck from the appellant. Whereas, it was Jumel Allen who "acquired goods ... by purchase", Richard Allen "sought goods ... by purchase." *Cameron, supra.* Clearly, the first requirement is met. As to the second, it is undisputed that the misrepresentation as to the goods actually purchased formed the basis of the complaint and Richard Allen's subsequent injury.

A contrary position would be untenable. Indeed, the appellee best summarizes the result if a contrary position were taken:

The denial of recovery to Appellee Richard Allen would say to wrongdoers that they may escape the consequences of their misdeeds when the goods that they have sold, as a consequence of their misrepresentation of its uses, characteristics or benefits, happen to injure someone other than the party who literally signed the purchase agreement.

The appellant's eighth point of error is overruled.

██ The appellant urges, in his ninth point of error, that the trial court erred in failing to sustain the appellant's objection to the submission of special issue no. 14 based on the proposition that the theory of recovery incorporated therein has never been pled; that is, the appellee, Richard Allen, pled only negligence and not a DTPA cause of action, and, therefore, it was error, over objection, to submit special issue no. 14. We disagree.

The appellant contends that it objected to the submission of the special issue in question "based upon there being no pleading to support the submission of the issue", yet we are not referred to the portion of the record reflecting such objection. Instead, the record reflects that the appellant urged its "laundry list" of objections "A", "B", "C", and "D", which counsel previously stated would mean no evidence, insufficient evi-

dence, against the great weight and preponderance of the evidence, and no pleadings. The record further reflects that the appellant's counsel objected to special issue 14 in that the issue was "too vague and needs some type of instruction as to what elements of damages the jury might consider." The appellant's objection to pleading was waived. The language of this court in *Mahan Volkswagen v. Hall*, 648 S.W.2d 324 (Tex.App.1982) is dispositive of this point of error. Therein, Chief Justice Evans stated:

It is very questionable whether these allegations could be construed to support a claim for treble damages under the Deceptive Trade Practices Act based upon Astro's alleged failure to disclose. However, special issues 19 and 20 were submitted to the jury without objection by Astro's counsel, except upon a general form objection requested as objections "A," "B," "C," and "D," which the parties agree meant "no evidence," "insufficient evidence," "against the great weight and preponderance of the evidence", and "no pleadings."

Objections to a charge must be specific and distinct, *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980), and a form objection which does not specifically inform the trial court of the nature of the defect in a special issue, will not preserve error. *Monsanto Company v. Milam*, 494 S.W.2d 534 (Tex.1973). Since Astro used a "laundry list" of objections to each of the special issues, and did not sufficiently apprise the trial court that it objected to the submission of issues 19 and 20 on the ground that the pleadings would not support a claim under the Deceptive Trade Practices Act based on a failure to disclose, that objection must be deemed waived. Tex.R. Civ.P. 274.

The appellant's ninth point of error is overruled.

██ The appellant urges, in his tenth point of error, that the trial court erred in excluding evidence pursuant to the collateral source rule, that payment on an insurance policy was made to the Associate Fi-

nance Company which held the promissory note on the truck.

Applicability of the collateral source rule notwithstanding, this point of error has been waived.

Tex.R.Civ.Pro. 94 provides that in a responsive pleading, a party shall set forth affirmatively matters constituting an affirmative defense. *Brown v. American Transfer And Storage Co.,* 601 S.W.2d 931 (Tex.1980). The responsive pleading of the appellant contains no reference to insurance or its entitlement to an offset. The right to an offset has been held to be an affirmative defense, *Brown, supra,* and it has been said that the burden of pleading offset and proving facts necessary to support it are on the party making the assertion. *Southwestern Bell Telephone Co. v. Gravitt,* 551 S.W.2d 421 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). The appellant has failed to meet its burden in this respect and cannot be heard to complain on appeal that the trial court excluded evidence concerning an insurance payment and its offset against appellee's damages incident thereto.

The appellants' tenth point of error is overruled.

■■■ Pursuant to special issue no. 8, the jury awarded the appellee, Jumel Allen, $8,568.80 in lost profits. The appellant, in his eleventh and twelfth points of error, urges that such a finding is "not supported in the evidence" and, in the alternative, that it "is so against the great weight and preponderance of the evidence as to be manifestly unjust." We disagree.

The record reflects that during the seven week period that the appellee, Jumel Allen, had been operating his hauling business prior to the trucks collapse, there were average gross earnings of $634.78 per week and average net earnings of $446.10 per week.

The appellant urges that "as a matter of law [the appellee's hauling business was] an unestablished business without a sufficient record of proven profits." On the contrary, it has been said that merely because a business is new, lost profits will not be denied *if* there is factual data available to furnish a basis for computation of probable losses. *Barbier v. Barry,* 345 S.W.2d 557 (Tex.Civ. App.—Dallas 1961, no writ). The record contains sufficient factual data to support the jury's award of lost profits, and, therefore, this award will not be disturbed. The appellants' eleventh and twelfth points of error are overruled.

■■■ The appellant urges, in his thirteenth and final point of error, that the trial court erred as a matter of law in entering judgment for lost profits because any causal link between appellant's breach of warranty and the appellee's lost profits was "supervened" by the theft of the truck.

Notwithstanding the fact that under this record this position is substantively untenable, procedurally, the appellant cannot be heard to complain on appeal. Although the jury was instructed as to the meaning of proximate cause, the appellant's counsel failed to request a limiting instruction on "supervening cause" based on the theft of the truck. By failing to object or to submit such instructions in substantially correctly worded form, the appellant has waived any error. Tex.R.Civ.Pro. 279. Indeed, absent such objection and/or submission, the appellant cannot be heard to complain for the first time on appeal.

The appellant's thirteenth and last point of error is overruled.

By way of his first, of two, crosspoints, the appellee, Jumel Allen, urges that the trial court erred in disregarding the jury's award of $15,000 damages for mental anguish which was, according to the appellee, "supported by evidence of a willful tort and of attendant physical injury."

■■■ It is well-established that recovery for mental anguish under the DTPA may not be had absent a showing of physical injury. *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977); *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App. —Beaumont 1979, writ ref'd n.r.e.); *Young v. DeGuerin,* 591 S.W.2d 296 (Tex.Civ.App. —Houston [1st Dist.] 1979, no writ); *Cen- Tex Portable Buildings, Inc. v. Young,* 598 S.W.2d 42 (Tex.Civ.App.—El Paso 1980,

writ ref'd n.r.e.). In *Webster College v. Speier,* 605 S.W.2d 712 (Tex.Civ.App.—Eastland 1980) the Court again held that damages for mental anguish were not, in the absence of physical injury, recoverable in a DTPA case. In *Speier v. Webster College,* 616 S.W.2d 617 (Tex.1981), the Court affirmed that portion of the lower court's opinion denying recovery for mental anguish, but reversed on other grounds. See *Brown v. American Transfer and Storage Company,* 601 S.W.2d 931 (Tex.1980).

■ In the instant case, a willful tort was not proven as would support a recovery for mental anguish upon common law grounds. Also, there is insufficient evidence of a physical injury resulting from the alleged mental anguish. Jumel Allen testified that he was upset, worried, nervous, and could not sleep at night. Such a condition does not constitute physical injury. *See, Brown, supra.* He did testify that he had hemorrhoids as a result of his anxiety. We can find no authority that hemorrhoids constitute a physical injury so as to justify recovery for mental anguish. However, even if hemorrhoids were viewed as an injury, there was no medical evidence offered by the appellee, Jumel Allen, to link his hemorrhoids to his mental condition.

The appellee's first cross-point is overruled.

■ Lastly, in his second cross-point of error, the appellee urges that the trial court erred in failing to treble the appellee, Richard Allen's, actual damages under the DTPA. In this respect, their entire argument is as follows:

> The election by Appellee Jumel Allen of punitive damages awarded to him by the jury, rather than treble damages under the DTPA, should not affect Appellee Richard Allen's right under the DTPA to recover treble *his* actual damages. The trial court, therefore, improperly declined to enter judgment trebling Appellee Richard Allen's actual damages and should be reversed on this point on appeal.

The appellant cites two cases decided by this court which stand for the proposition that punitive damages and treble damages cannot be recovered in the same judgment; that case law prohibits one judgment allowing a double recovery of punitive damages. *Charlie Thomas Courtesy Ford v. Avalos,* 619 S.W.2d 9 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Riverside National Bank v. Lewis,* 572 S.W.2d 553 (Tex.Civ.App.—Houston [1st Dist.] 1978, rev'd on other grounds). We agree. However, since we hold that only the DTPA theory has been pled and proved by both the appellees, the mandatory treble damages of the act governing this case are, therefore, applicable equally. *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). To hold otherwise would mean that a defendant under the DTPA could limit his treble damage exposure to just one "consumer" even if there were multiple "consumers" joined in a single suit as plaintiffs.

The appellees' second cross-point of error is sustained.

Pursuant to the foregoing, the judgment of the trial court is affirmed and the recovery is reformed as follows:

(1) actual damages to Jumel Allen: $51,-206.40; ($2,000 based on year model; $6,500 based on characteristics benefits and uses; $8,568.80, based on lost profits. This figure, totaling $17,068.80, is trebled, mandatorily, under the DTPA provision in effect at the time of this action).

(2) Actual damages to Richard Allen: $15,000; ($5,000 recovery, trebled mandatorily, under the DTPA provision in effect at the time of this action).

(3) Total recovery: $66,206.40.

COHEN, J., concurs in part and dissents in part.

For Publication. TEX.R.CIV.P. 452.

COHEN, Justice, concurring and dissenting.

I agree that the judgment in favor of the appellees should be affirmed, but disagree that it should be reduced in the manner done by the majority.

As stated in *Custom Leasing, Inc. v. Texas Bank & Trust Company of Dallas,* 516 S.W.2d 138, 143 (Tex.1974) in order to recover for fraud a plaintiff must show that a defendant knowingly or recklessly made a false representation of a material fact intending that the plaintiff rely upon it, and the plaintiff must actually rely upon it and suffer injury therefrom.

The jury found that the appellants maliciously breached an express warranty, by falsely representing a material fact, namely, the age of the truck sold to the appellees. The jury further found that the appellees relied on this material, malicious misrepresentation to their detriment. Thus, many, if not all, of the elements of fraud were found by the jury. In this situation, I would hold that Rule 279 of the Texas Rules of Civil Procedure requires us to deem the omitted issues, if any, to support the judgment of the trial court. Rule 279 provides that where a ground of recovery consists of more than one issue and some of the issues necessary to sustain the ground of recovery, *and necessarily referable thereto,* are answered by the jury, with evidentiary support in the record, then the omitted issues shall be deemed found by the court in a manner to support the judgment, when, as in this case, no objection was made to the omission of such issues from the jury charge.

The issues found by the jury were necessarily referable to a cause of action for fraud, especially in view of the fact that another special issue, regarding exemplary damages, was submitted and answered in favor of the appellees. That issue was necessarily referable only to the cause of action for fraud because exemplary damages can be recovered for fraud, but not for any other cause of action submitted to the jury. It is well established Texas law that exemplary damages cannot be recovered for a malicious, indeed even a gleeful, breach of contract. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563 (Tex.1981). Therefore, from a review of the charge as a whole and not as a series of isolated parts, I believe that if there was any confusion in the appellant's mind when the jury charge was submitted which led it to believe that it was *not* defending a fraud claim, that confusion should have been dispelled by the presence of the special issues regarding exemplary damages and malice. Consequently, I would affirm the judgment as rendered by the trial court.