In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00049-CV
______________________________


DR. DANFORD BOOKOUT, PHYLLIS BOOKOUT, AND BOOKOUT 
                            CHIROPRACTIC CENTER, INC., Appellants
 
V.
 
DR. CRIS BOOKOUT AND TERESA BOOKOUT, Appellees


                                              

On Appeal from the Fifth Judicial District Court
Bowie County, Texas
Trial Court No. 01C1316-005


                                                 



Before Morriss, C.J., Ross and Cornelius, *JJ.
Opinion by Chief Justice Morriss


__________________________________________
*William J. Cornelius, Retired, Chief Justice, Sitting by Assignment

O P I N I O N
            For seven years, Cris Bookout thought he had a deal to purchase the Bookout Chiropractic
Center (Clinic) for which Cris was the sole practicing chiropractor. In 1994, a document styled
"Contract for Deed" had been created—but never signed—detailing terms of what might become
Cris' purchase from his brother, Danford Bookout (Dan), and Dan's wife, Phyllis, of real and
personal property constituting the Clinic. Between July 1994 and August 2001, Cris had arranged
for payments totaling $3,000.00 per month—the amount specified in the unsigned "Contract"—to
Dan and Phyllis. Those payments had been made from Bookout Chiropractic Center, Inc.
(Corporation), the entity through which Cris ran the Clinic during those years, but an entity owned
by Dan and Phyllis. In August 2001, Cris and Dan had a disagreement; Cris was fired as an
employee of the Corporation; and Cris


 sued Dan, Phyllis, and the Corporation for breach of the
Contract. A jury found that Cris had a contract with Dan, Phyllis, and the Corporation; that the
contract had not been honored by Dan, Phyllis, and the Corporation; and that Cris should recover
damages and attorneys fees against all three. On appeal, the three defendants assert that the statute
of frauds bars recovery and that no, or insufficient, evidence


 exists of any involvement in the
Contract by Phyllis or the Corporation.
            We affirm in part and reverse and render in part. We do that because we hold (1) Cris' partial
performance removes the contract from the statute of frauds, (2) sufficient evidence supports Phyllis'
liability, and (3) no evidence supports the Corporation's liability.
1.         Cris' Partial Performance Removes the Contract from the Statute of Frauds

            Whether a contract falls within the statute of frauds is a question of law. Bratcher v. Dozier,
162 Tex. 319, 321, 346 S.W.2d 795 (1961). A contract which is for the sale of real estate or which
is not to be performed within one year after the agreement's formation is not enforceable unless it
is (1) in writing and (2) signed by the person to be charged with the promise. Tex. Bus. & Com.
Code Ann. § 26.01 (Vernon 2002). It is uncontroverted that, though the Contract was partly for the
sale of real property and was not to be performed within a year, it was not signed.


 Thus, the
Contract is unenforceable unless an exception to the statute of frauds applies.
            Partial performance is an exception to the statute of frauds. Exxon Corp. v. Breezevale, Ltd.,
82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). The partial performance must be
"unequivocally referable to the agreement and corroborative of the fact that a contract actually was
made." Id. Actions relied on to establish the partial performance exception to the statute of frauds
must be such as could have been done with no other design than to fulfill the particular agreement
sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement
relied on by the plaintiff. Id.
            Generally, the party claiming an exception to the statute of frauds must secure a finding to
that effect. Barbouti v. Munden, 866 S.W.2d 288, 295 (Tex. App.—Houston [14th Dist.] 1993, writ
denied). Here, partial performance was not submitted to the jury, and there was no request that the
trial court make a finding on partial performance. Those failures would be fatal to Cris' case unless
a finding on partial performance is otherwise implied by law. We hold such a finding is implied
because (A) partial performance is necessarily referable to the Contract, and (B) there is sufficient
evidence of partial performance.
            (A) Partial Performance Is Necessarily Referable to the Contract
            Applicable to this issue is Rule 279 of the Texas Rules of Civil Procedure.
When a ground of recovery or defense consists of more than one element, if one or
more of such elements necessary to sustain such ground of recovery or defense, and
necessarily referable thereto, are submitted to and found by the jury, and one or more
of such elements are omitted from the charge, without request or objection, and there
is factually sufficient evidence to support a finding thereon, the trial court, at the
request of either party, may after notice and hearing and at any time before the
judgment is rendered, make and file written findings on such omitted element or
elements in support of the judgment. If no such written findings are made, such
omitted element or elements shall be deemed found by the court in such manner as
to support the judgment.
Tex. R. Civ. P. 279. Under Rule 279, the authority for an implied finding on any unsubmitted issue
belonging to a given ground of recovery or defense depends on there having been a submission of
some other issue "necessarily referable" to that same ground of recovery or defense. Tex. Employers'
Ins. Ass'n v. Hilderbrandt, 62 S.W.2d 209 (Tex. Civ. App.—Beaumont 1933, no writ).
            We therefore must decide whether, within the meaning of Rule 279, proof of partial
performance, as an exception to the statute of frauds, is an "element" of Cris' contract "ground of
recovery" or is, instead, exterior to that ground of recovery. While we find no controlling precedent
on the question, some guidance can be obtained from analogous caselaw.
            A farmer sued a neighboring railroad company for flooding, and thus damaging, his crop. 
The jury found how many bales of cotton the farmer would have grown but for the flood damage. 
The trial court failed, and there was no objection directed at the failure, to ask the jury how many
bales of cotton the plaintiff actually raised on the land. The Texas Supreme Court determined the
two issues were complementary and therefore implied a finding on the unsubmitted issue, since there
was sufficient evidence on the issue consistent with the judgment. See Wichita Falls & Okla. Ry.
Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 84 (1940).
            In a dispute between a building contractor and its rental equipment supplier, the jury found
that the original contract between the two existed and also determined a value of the contractor's
"cover" incurred in lieu of the equipment which was to have been—but was not—supplied under the
terms of the original contract. The jury was not asked whether the original contract was breached
by the equipment supplier or whether the supplier agreed to allow the contractor to obtain "cover"
for the equipment the supplier did not provide. The appellate court implied those two findings under
this rule. See Presslor v. Kandy, Inc., 611 S.W.2d 953, 956 (Tex. App.—Waco 1981, writ ref'd
n.r.e.).
            A take-nothing judgment, based on limitations, was rendered after a jury found a plaintiff
failed to use diligence in serving process on the defendant. The jury charge omitted any question
about when the cause of action accrued, but this Court affirmed the judgment, implying the needed
finding under this rule. See Hoffman v. Wall, 602 S.W.2d 324, 326 (Tex. App.—Texarkana 1980,
writ ref'd n.r.e.).
            In a dispute between a landowner and a concrete contractor, the jury found both that the
contractor had not substantially performed the agreed task of laying a foundation on the landowner's
property and that $300.00 was the cost of removing from the property the foundation work which
was done by the contractor. On appeal from a judgment in favor of the landowner, the appellate
court rejected the contractor's argument that there was no jury finding on the need to remove the
foundation, because it was properly implied from the issues decided by the jury. See Volkman v.
Eakman, 496 S.W.2d 752, 757 (Tex. App.—Fort Worth 1973, writ ref'd n.r.e.).
            An individual sued, and recovered a judgment against, his former employer for wages under
an oral contract. The jury found the parties had contracted for the employment but made no finding
that the employee performed under the contract, because the latter issue had been improperly
conditioned on a negative answer to the former. The appellate court implied a finding on that issue
under Rule 279. See AAA Air Conditioning & Mfg. Corp. of Tex. v. Barr, 186 S.W.2d 825, 826–27
(Tex. Civ. App.—Dallas 1944, writ ref'd).
            A buyer of a tire sealing product sued the product's manufacturer for breach of express and
implied warranties, among other complaints, but the jury was not asked whether the buyer gave the
manufacturer the required advance notice of breach of express warranty. From a trial court judgment
for the buyer, the appeal, in part, dealt with the question of whether notice of breach of express
warranty could be implied from express jury findings that an express warranty was breached. The
appellate court characterized notice as a condition precedent for the buyer's cause of action for
breach of express warranty, rather than lack of notice being an affirmative defense to that cause of
action. The court's analysis thus suggested that the buyer's notice of breach of express warranty
would have been the subject of an implied finding, but for the jury's express finding that the buyer
failed to give notice of breach of an implied warranty. See U.S. Tire-Tech, Inc. v. Boeran, B.V., 110
S.W.3d 194, 198–200 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). To similar effect is Tex.
Tech Univ. Health Sci. Ctr. v. Apodaca, 876 S.W.2d 402, 411 (Tex. App.—El Paso 1994, pet.
denied) (implied omitted finding of notice as one element of negligence action under Texas Tort
Claims Act claim).
            In the present case, the trial court submitted the questions, serially, whether Dan, Phyllis, and
the Corporation intended to bind themselves to an agreement; whether Dan, Phyllis, and the
Corporation breached that agreement; and what amount of damages would compensate Cris for his
resulting damages.


 The jury was not asked to address partial performance, and that was omitted
without a request or an objection. Post verdict, the trial court was not asked to, and did not, make
an express finding on such issue.
            Because it is uncontroverted that the statute of frauds had been triggered and would bar Cris'
recovery unless he established partial performance of the Contract, partial performance was a
condition precedent to, and therefore was functionally an element of, Cris' breach of contract ground
of recovery. Under this record, the issue of whether there was a contract and the issue of whether
Cris partially performed it are strongly linked, in that most of the evidence that the Contract existed
is the evidence of Cris' partial performance of its terms.
            The purpose of the rule implying omitted findings is to require defects in a jury charge to be
brought to the trial court's attention, so the defects can be corrected before submission to the jury. 
Neuman v. Tex. Employers' Ins. Ass'n, 377 S.W.2d 108 (Tex. Civ. App.— El Paso), rev'd on other
grounds, 379 S.W.2d 295 (Tex. 1964). Limiting the application of the rule to issues "necessarily
referable" to a particular ground of recovery or defense is for the purpose of giving fair notice of
incomplete submission to the parties. Superior Trucks, Inc. v. Allen, 664 S.W.2d 136 (Tex.
App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).
            In light of the rule's purpose, the analogous caselaw, and this record, we conclude the element
of partial performance was, within the meaning of Rule 279, an omitted element of Cris' ground for
recovery. We therefore hold that the trial court impliedly found, in support of the judgment, that Cris
partially performed the Contract, if such a finding is supported in the evidence. See Tex. R. Civ. P.
279.
            (B) There Is Sufficient Evidence of Partial Performance
            Whether sufficient partial performance has occurred is a question of fact. Fluellen v. Young,
664 S.W.2d 776, 781 (Tex. App.—Dallas 1983, no writ). We hold partial performance is supported
by sufficient evidence.
            In support of his assertion of partial performance, Cris points to the payment of $3,000.00
per month to Dan and Phyllis, beginning in July 1994 and continuing until August 2001. Dan,
Phyllis, and the Corporation point to the fact that the payments came from the funds of the
Corporation, a Corporation owned by Dan and Phyllis. They also point out that the payments were
designated as rent or salary. Therefore, they argue, Cris did not partially perform the agreement;
hence, the statute of frauds prevents the enforcement of the unsigned contract.
            True, the $1,000.00 checks to Phyllis were marked as payroll items. The $2,000.00 checks
to Dan initially were designated "Clinic Payment," but in May 1995 began to be designated "rent." 
Cris testified these payments were indeed for the purchase of the Clinic, but that Dan and Phyllis
directed the designations for tax benefits. Over time, the payments changed from once a month to
bi-weekly, and then back again. Cris' testimony explained that, again, these were the directives of
Dan and Phyllis.
            Moreover, according to Cris, Phyllis worked approximately five hours a week at the Clinic
for the first two to three years, starting in July 1994. Ordinarily, for the hours Phyllis worked, she
received compensation besides the monthly $1,000.00 "payroll" payments. The record shows Phyllis
received her usual $1,000.00 March 1, 1995, but then also was paid $50.00 March 3, 1995, the
additional check designated as "Office Help." Thereafter, Phyllis' pattern was to work approximately
five hours a month. Phyllis, herself, testified that she would work at the Clinic when an employee
was absent, but did not always receive extra compensation for the work. Cris testified that Phyllis
was paid separately, when compensated, for her help at the Clinic, in addition to the $1,000.00
payments. From this evidence, the jury could have concluded the $1,000.00 payments were for
something other than for services rendered, notwithstanding the way in which they were marked.
            Dan and Phyllis testified they received rent and salary from the Clinic before 2001, in
monthly amounts totaling from $1,000.00 to $1,800.00—a fluctuation which depended on the
income of the Clinic. The record reflects that, before July 1994, Dan and Phyllis did not receive
$3,000.00 payments. They did thereafter. It is also worth noting that, even when the Clinic
experienced a $23,000.00 loss in 1997, Dan and Phyllis continued to receive monthly $2,000.00 and
$1,000.00, respectively.  
            That the payments came from the Corporation's funds is not dispositive, because the evidence
is also clear that, during this time, the only practicing chiropractor generating income for the
Corporation was Cris, and the parties treated the 1994 Contract as effectively putting the Corporation
in Cris' hands for all purposes.
            Cris exercised possession and control of the Corporation by operating the Clinic on a day-to-day basis after the Contract. From 1980 to July 1994, Cris had no managerial duty and was inactive
in the Clinic's daily operation. From July 1, 1994, through August 1, 2001, Cris paid, from the
Corporation's account, all the bills, salaries, and taxes. For those seven years, Cris kept track of all
the income and the expenses of the Clinic. 
            After July 1994, Cris computerized the Clinic. The Clinic computer system was upgraded
in 1997 and 2000. Cris personally borrowed against his savings account to pay for these
improvements. Cris also replaced the x-ray processor. Again, Cris personally borrowed against his
savings account to pay for the processor. In total, Cris incurred personal debt of $7,500.00 to pay
for the computer upgrades and the x-ray processor. 
            There were additional changes in the operation of the Clinic after July 1994. Before July
1994, Dan owned an airplane, for which the Corporation paid the expenses. Once Cris raised the
issue after July 1994, Dan started making personal payments for the maintenance and storage of, and
insurance on, the airplane. Also, Dan and Phyllis started reimbursing the Corporation for any
personal long distance telephone calls made on the Clinic's equipment. 
            The implied finding of partial performance is supported by the evidence, so the contract is
enforceable.
2.         Sufficient Evidence Supports Phyllis' Liability
            Appellants argue that no evidence shows Phyllis intended to be a party to the agreement. Cris
himself testified that only he and Dan met to discuss the June 1994 agreement. 
            The 1994 draft contract specifically names Phyllis. Also, Cris argues that Phyllis
acknowledged the sales agreement on several different occasions. Cris testified that, five years later,
Phyllis commented that the Clinic was now half Cris'. Further, when Cris consulted Phyllis about
getting another table or something for the Clinic, she responded, "Do what you want, it's your place. 
You don't have to tell us." 
            Further, Phyllis received the monthly $1,000.00 payments. Phyllis, between the years of
1994 and 2001, actively changed the designation and the method of the payments. Phyllis knowingly
accepted the monthly payments and enjoyed the benefits. Hence, the contract is enforceable against
Phyllis.
3.         No Evidence Supports the Corporation's Liability
            Dan, Phyllis, and the Corporation argue that there is no evidence in the record that the
Corporation acted through any of its agents to enter into any purported agreement with Cris. Cris
argues that Dan and Phyllis were the only shareholders and owners of the Corporation and that the
Corporation was set up by Dan. Cris in essence asserts that Dan and Phyllis effectively own the
assets of the Corporation. He concludes, therefore, that Dan and Phyllis bound the Corporation to
the contract.
            We find no evidence that the Corporation was a party to the Contract. Had Dan or Phyllis
exhibited the intent and authority to act for the Corporation in selling corporate assets, they might
have bound the Corporation. But we find no evidence of authority or intent for either of them to act
as an agent to bind the Corporation. The Corporation is not named in the Contract. Dan and Phyllis
are named in the Contract solely in their individual capacities and with no hint of any agency status. 
Instead, the Corporation was uniformly ignored. No evidence supports liability by the Corporation.
            We affirm Cris' judgment against Dan and Phyllis but reverse and render a judgment that Cris
take nothing against the Corporation.
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          April 27, 2005
Date Decided:             June 10, 2005